OPINION
{¶ 1} Defendant-appellant, Dianne Dunning, kna Dunning-Marks, and intervening plaintiff-appellant, Buckeye Industrial Mining Company, appeal the judgment of the Lake County Court of Common Pleas, quieting title to certain mineral rights in favor of plaintiff-appellee and intervening defendant-appellee, Bergholtz Coal Holding Company, and awarding Bergholtz damages in the amount of $25,567.65. For the following reasons, we affirm in part and reverse in part the decision of the court below.
 {¶ 2} The subject property of the present dispute is "all the coal underlying" seven tracts of land comprising 597.041 acres situated in Brush Creek and Ross Townships, Jefferson County, Ohio. Formerly, the rights to this coal was owned by Hill Farm, Inc. Thomas S. George was the president of Hill Farm.
 {¶ 3} Toledo Coke, Inc. was a wholly owned subsidiary of Pickands Mather Company, whose principal business was developing mineral resources for the steel industry. Scott F. Brown, a former employee of Pickands Mather and current owner of Bergholtz, testified that it was a common practice for companies such as Toledo Coke, when developing mineral rights, to use nominees to disguise the company's interest in those rights. Scott testified this was done to control the price paid by companies for mineral rights.
 {¶ 4} John K. Saltsman was a lawyer practicing in Carrollton, Ohio. Toledo Coke used Saltsman as nominee for properties it was acquiring by titling these properties in Saltsman's name.
 {¶ 5} On February 15, 1968, Toledo Coke and Saltsman signed a Declaration of Trust. According to this document, Saltsman acknowledged that he had "acquired certain mining properties, options and leases in Jefferson County, Ohio, all as specifically identified and listed on Schedule A attached hereto." Saltsman acknowledged that he held these properties in trust for Toledo Coke and would "convey, assign and transfer" these properties as directed by Toledo Coke. Saltsman also agreed to receive future acquisitions or rights of interests in coal properties by Toledo Coke and to "promptly execute * * * a written declaration supplemental hereto so as to include hereunder the appropriate descriptions of the option, leases or other rights or interests in coal properties and thereby incorporate the same within the terms [of the trust agreement]."
 {¶ 6} On August 15, 1968, six months after the Declaration of Trust was signed, Hill Farm executed a general warranty deed of "all the coal underlying" its property to Saltsman in his individual capacity. The Hill Farm property was never formally incorporated into the Declaration of Trust. Saltsman claimed that he was not notified that the Hill Farm property had been titled in his name.
 {¶ 7} At trial, Bergholtz introduced evidence from Toledo Coke's corporate files that Toledo Coke purchased the Hill Farm coal rights and used Saltsman as a trustee for those rights. This evidence included correspondence between Thomas E. Morton, Jr., attorney for Pickands Mather, and Charles L. Snyder, Jr., attorney for Hill Farm, negotiating the sale of the Hill Farm property for $44,778. There was also a check request to the Pickands Mather controller by Morton for a check in the amount of $34,788, to be issued to Snyder. The check request noted that the "initial payment of $10,000 was made * * * to T.S. George, President of Hill-Farm, Inc., the owner of the coal, on July 10, 1968." Finally, Saltsman testified that a conveyance fee of $44.80 was paid on the deed transferring the Hill Farm property into his name. Saltsman testified that the conveyance fee was calculated according to the purchase price of the property at a rate of one dollar to a thousand. A conveyance fee of $44.80 would be taxed to a purchase price of $44,800.
 {¶ 8} Bergholtz presented additional evidence that Saltsman was acting as trustee for Toledo Coke with regard to the Hill Farm property. In 1977, Saltsman was involved in negotiations between Pickands Mather and Industrial Mining Company. A proposed Drilling Agreement, signed by Saltsman, identified Saltsman as the grantor of drilling privileges on the Hill Farm property. A provision in the Drilling Agreement provides that any notice or other communication delivered to Saltsman shall be deemed delivered to "Pickands Mather Co."
 {¶ 9} In 1983, Pickands Mather negotiated with Industrial Mining Company, and its president John Grisham, to lease the Hill Farm coal rights. A draft of an unexecuted option agreement prepared at this time provides that Toledo Coke "holds all right in the Premises by virtue of a Declaration of Trust between it and John K. Saltsman dated February 15, 1968."
 {¶ 10} In 1986, Pickands Mather, including Toledo Coke, was acquired by Cleveland-Cliffs Inc. In 1988, Toledo Coke became Bergholtz Coal Holding Company.
 {¶ 11} Industrial Mining Company merged with the Buckeye Coal Mining Company to become Buckeye Industrial Mining Company. Buckeye is a subsidiary of Keller Group, Inc.
 {¶ 12} Thomas George died in 1987. Saltsman was retained to handle George's estate. After closing the estate, Saltsman discovered the deed transferring the Hill Farm property into his name. Saltsman claimed that this was the first time he had seen the Hill Farm deed and assumed that George had put this property in his name to conceal it from his ex-wife. Saltsman testified that George had previously put stock in Saltsman's name for this purpose and that Donna Dunning, George's daughter, suspected that there were other hidden assets. Saltsman never claimed to be the rightful owner of the Hill Farm property. Nor was Saltsman's belief that the he was holding the Hill Farm property in trust for George's estate substantiated at trial.[1]
 {¶ 13} Saltsman contacted Donna Dunning who instructed him to transfer the Coal rights to Dianne Dunning-Marks, George's granddaughter. On April 13, 1988, Saltsman executed a warranty deed transferring ownership of the Hill Farm property to Dianne Dunning. There was no conveyance fee to transfer the property to Dianne Dunning because "no money or other valuable and tangible consideration" was paid for the property and the transfer was not a gift.
 {¶ 14} Dunning-Marks began paying real estate taxes for the Hill Farm property. By 1992, Dunning-Marks had paid $1,882.35 in real estate taxes.
 {¶ 15} On January 22, 1991, Dunning-Marks leased the Hill Farm property to Buckeye for ten years. Buckeye retained Robert C. Hargrave, a Steubenville attorney, to conduct a title examination of the Hill Farm property. Hargrave's examination revealed no adverse interests in the property. According to the terms of the lease, Buckeye paid Dunning-Marks $200 a month in advance royalties or $24,000 for the full term of the lease.
 {¶ 16} In 1992, Brown, who had been working for Pickands Mather since 1975, became the owner of Bergholtz. After acquiring Bergholtz, Brown began determining the various coal interests held by Bergholtz/Toledo Coke. In 1993, Bergholtz began paying real estate taxes on the Hill Farm property. On May 24, 1993, Saltsman signed a quitclaim deed transferring the Hill Farm and other properties to Bergholtz. A letter from Saltsman to Bergholtz at this time referred to Saltsman's "long and arduous trusteeship of these lands."
 {¶ 17} Brown testified that he learned from a conversation with Grisham in 1996 that Buckeye had entered a lease agreement with Dunning-Marks for the Hill Farm property. According to Grisham, Brown was informed of Buckeye's lease with Dunning-Marks through a Buckeye leasing agent. After learning of the lease, Brown ordered his controller, Thomas J. Burke, to investigate Dunning-Marks/Buckeye's claim. Burke concluded that Dunning-Marks was the true owner of the coal rights. Believing the value of the coal rights to the Hill Farm property to be negligible, Brown decided not to pursue the matter at this time.
 {¶ 18} In 2001, Buckeye renewed its lease with Dunning-Marks with modifications. In 1991 lease, Dunning-Marks "warrant[ed] and agree[d] to defend title to these leased premises." This provision to warrant and defend title was deleted from the 2001 agreement to renew/modify the lease. Grisham testified that this provision was deleted because "the Dunnings were talking to us about litigation which was forthcoming on the part of Pickands and they asked us basically to participate in that litigation." The new lease also required Buckeye to pay advance royalties of $250 a quarter plus a $300 annual leasing fee. In March 2004, Dunning-Marks quitclaimed her interest in the Hill Farm property to Keller Group Services, Inc., a subsidiary of Keller Group, Inc.
 {¶ 19} Brown reassessed the worth of perfecting Bergholtz' interest in the Hill Farm property after the East Fairfield Coal Company expressed an interest in leasing the Hill Farm coal rights from Bergholtz. In August 2002, Brown contacted Dunning-Marks and asserted Bergholtz' interest in the property.
 {¶ 20} On August 20, 2003, Bergholtz filed suit against Dunning-Marks to quiet title and asserting a claim of mistaken conveyance. On December 1, 2003, Buckeye moved to intervene pursuant to Civil Rule 24. The trial court granted Buckeye's motion and Buckeye filed an intervening complaint seeking to quiet title to the Hill Farm property in its favor. The case went to trial on September 30 and October 1, 2004. In a judgment entry filed November 30, 2004, the trial court found in favor of Bergholtz, quieting title and canceling the transfer from Saltsman to Dunning-Marks. The trial court also rendered judgment in Bergholtz' favor against Dunning-Marks in the amount of $25,567.65, representing $27,450 paid by Buckeye to Dunning-Marks minus $1,882.35 paid in real estate taxes by Dunning-Marks. From this judgment, Buckeye and Dunning-Marks timely bring error.
 {¶ 21} Appellants raise the following assignments of error:
 {¶ 22} "[1.] The trial court erred to the prejudice of appellants by entering judgment in favor of Bergholtz where Saltsman did not hold the mineral rights in trust for Toledo Coke.
 {¶ 23} "[2.] The trial court erred to the prejudice of appellants by entering judgment in favor of Bergholtz where there was no mistake that entitled Bergholtz to relief.
 {¶ 24} "[3.] The trial court erred to the prejudice of appellants by granting judgment in favor of Bergholtz where its claims were barred by the statute of limitations.
 {¶ 25} "[4.] The trial court erred to the prejudice of appellants by awarding Bergholtz damages against Dunning."
 {¶ 26} "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 280.
 {¶ 27} The burden of proving the existence of a trust rests with the party asserting it. Gammarino v. Hamilton Cty. Bd. ofRevision, 84 Ohio St.3d 155, 158, 1998-Ohio-715, citing Hill v.Irons (1953), 160 Ohio St. 21, 29. "In order to engraft a trust upon an absolute deed, the declaration of such trust must be contemporaneous with the deed, and the evidence relied upon must be clear, certain and conclusive and must establish the existence of the trust beyond a reasonable doubt." Hill, 160 Ohio St. 21, at paragraph one of the syllabus. Although "[a] trust engrafted on an absolute deed may be shown by parol evidence[,] * * * the declaration of such trust must [still] be contemporaneous with the deed * * *." Russell v. Bruer (1901), 64 Ohio St. 1, paragraph two of the syllabus.
 {¶ 28} Appellants argue that Bergholtz failed to meet its burden of establishing the existence of an express trust with regard to the Hill Farm property. Appellants' arguments focus on the failure of Saltsman and Toledo Coke to comply with the Declaration of Trust's own provisions for incorporating future acquisitions of property. The Declaration of Trust provided that Toledo Coke would "tender" subsequent rights or interests in coal properties to Saltsman who would "promptly execute and deliver * * * a written declaration supplemental hereto so as to include * * * and thereby incorporate the same within the terms hereof."
 {¶ 29} We further note that Bergholtz was required to prove that the declaration of trust was contemporaneous with the deed itself. Id.; Venetta v. Venetta (Feb. 28, 1963), 7th Dist. No. 1545, 1963 Ohio App. LEXIS 900, at *3 (citation omitted). "If a person * * * purports to transfer * * * an interest [not in existence] to another in trust, no trust arises even when the interest comes into existence in the absence of a manifestation of intention at that time." Restatement of Trusts, 2d, § 75. In the present case, Toledo Coke's interest in the Hill Farm property did not come into existence until six months after the Declaration of Trust.
 {¶ 30} Although the evidence does not support the conclusion that the Hill Farm property was properly incorporated into the February 15, 1968 Declaration of Trust, the evidence clearly demonstrates that Toledo Coke paid the purchase price for the property and that Saltsman was merely acting as nominee for Toledo Coke.
 {¶ 31} In this situation, "where property is transferred to one person but another pays the purchase price, the law presumes a resulting trust exists in favor of the person paying for the property." Hollon v. Abner (Aug. 29, 1997), 1st Dist. No. C960182, 1997 Ohio App. LEXIS 3814, at *5; Perich-Varie v.Varie (Aug. 27, 1999), 11th Dist. No. 98-T-0029, 1999 Ohio App. LEXIS 3990, at *7-*8. The Ohio Supreme Court has defined "a resulting trust as one that the court of equity declares to exist where the legal estate in property is transferred or acquired by one under circumstances indicating that the beneficial interest is not intended to be enjoyed by the holder of the legal title."Univ. Hosps. of Cleveland, Inc. v. Lynch, 96 Ohio St.3d 118,2002-Ohio-3748, at ¶ 56, citing First Natl. Bank of Cincinnativ. Tenney (1956), 165 Ohio St. 513, 515. A resulting trust will attach to property where efforts to create an express trust have failed or where a constructive trust is inappropriate. Bilovockiv. Marimberga (1979), 62 Ohio App.2d 169, 173. The degree of proof necessary to establish a resulting trust is clear and convincing evidence. Eckenroth v. Stone (1959),110 Ohio App. 1, 5 (citations omitted).
 {¶ 32} An equitable trust, however, will not attach to property acquired by a "bona fide purchaser." Groza-Vance v.Vance, 162 Ohio App.3d 510, 2005-Ohio-3815, at ¶ 33 (citations omitted); Nozik v. McDonald (1994), 99 Ohio App.3d 353, 358
(citation omitted). A "bona fide purchaser" is one who acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property. Shaker Corlett Land Co. v. Cleveland
(1942), 139 Ohio St. 536, at paragraph three of the syllabus.
 {¶ 33} In the present case, the lower court found that neither Dunning-Marks nor Buckeye were bona fide purchasers of the Hill Farm property. Dunning-Marks paid no consideration for the Hill Farm property. Saltsman transferred the property to her gratis in the mistaken belief that Dunning-Marks' grandfather, George, had transferred the property into his name to conceal the asset from his ex-wife. Buckeye leased the coal rights from Dunning-Marks with notice of Toledo Coke's interest in the property. Documents submitted at trial evidenced negotiations in 1983 between Pickands Mather and Grisham, then president of Industrial Mining, for an option to lease the mineral rights. Although Grisham testified at trial that one of the reasons he did not lease from Pickands Mather in 1983 was that Pickands Mather refused to warrant its title to the property.
 {¶ 34} Accordingly, there was competent and credible evidence in the record to support the trial court's findings that Saltsman held the Hill Farm property in trust for Bergholtz, albeit in a resulting trust, and that neither Dunning-Marks nor Buckeye were bona fide purchasers of the property.
 {¶ 35} Appellants' claim to be the rightful owners of the Hill Farm property based on the chain of title is strong. "The purpose of the [registered-land] system is to create an absolute presumption that the register of titles speaks the last word about the title to land, eliminating all `secret liens and hidden equities,' and making the language in the register of titles absolute proof of indefeasible title excepting only those encumbrances and claims noted therein." Kincaid v. Yount
(1983), 9 Ohio App.3d 145, 147, citing Curry v. Lybarger
(1937), 133 Ohio St. 55, 58-59. However, this "absolute presumption" only protects bona fide purchasers in good faith. As codified in Ohio's law, the presumption is stated thus: "No unregistered estate, interest, power, right, claim, contract, or trust shall prevail against the title of a registered owner taken bona fide for valuable consideration or of any person bona fide claiming through or under him." R.C. 5309.34. As the appellants do not qualify as bona fide purchasers, for the reasons stated above, Bergholtz' unregistered interest, under the circumstances of this case, prevails.
 {¶ 36} Appellants' first assignment of error is without merit.
 {¶ 37} In their second assignment of error, appellants argue that Bergholtz was not entitled to set aside the conveyance of the Hill Farm property from Saltsman to Dunning-Marks under the doctrine of mutual mistake. Appellants note that "[a] unilateral mistake occurs when one party recognizes the true effect of an [instrument] while the other does not." Kruppa v. All SoulsCemetery (Feb. 22, 2002), 11th Dist. No. 2001-T-0029, 2002 Ohio App. LEXIS 773, at *10 (citations omitted). Appellants correctly maintain that both Saltsman and Dunning-Marks recognized, and intended, the true effect of the deed conveying the property to Dunning-Marks.
 {¶ 38} While appellants are correct that Bergholtz pled a claim for "mistake of conveyance" and that the doctrine of mistake does not apply to the facts of this case, the trial court granted Bergholtz relief under its second cause of action to quiet title, which cause of action was also raised by Buckeye in its intervening complaint.
 {¶ 39} Bergholtz was entitled to bring an action to quiet title. "An action may be brought by a person in possession of real property * * * against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." R.C. 5303.01. Courts in Ohio have construed the requirement that the plaintiff be "in possession of real property" to include constructive possession, i.e. the claim of superior title, in certain circumstances. Harris v. Paul
(1930), 37 Ohio App. 206, 208. Constructive possession has been used to sustain actions to quiet title where neither party may be said to have actual possession of the property. Haban v.Suburban Home Mtge. Co. (Oct. 15, 1943), 2nd Dist. No. 3639, 1943 Ohio App. LEXIS 849, at *5 (citation omitted); Balsmeyer v.Lansdale (1927), 27 Ohio App. 125, 132; cf. Kay Homes, Inc. v.South (Nov. 18, 1994), 11th Dist. No. 93-L-182, 1994 Ohio App. LEXIS 5160, at *6 ("[i]n the absence of actual possession, legal title to the real estate will ordinarily constitute constructive possession sufficient to permit an action in trespass") (citation omitted).
 {¶ 40} In the present case, the property in question is the right to mine subsurface coal deposits. No party has begun to extract the subject coal. Accordingly, no party may be said to be in actual possession of the property. In these circumstances, an action to quiet title will lie as between conflicting holders of title to these rights. Harris, 37 Ohio App. at 207-208
("[w]here two persons claim under color of title, but neither is in actual possession, the superior title will prevail"); LoganGas Co. v. Keith (1927), 117 Ohio St. 206, 214 (where plaintiff failed to plead and prove actual possession in an action to quiet title to oil and gas leaseholds, it was sufficient that defendants raised the same claims on cross-petition).
 {¶ 41} The second assignment of error is without merit.
 {¶ 42} Under the third assignment of error, appellants assert that Bergholtz' claims are time-barred by the statute of limitations. Appellants argue that the ten-year statute of limitations applicable to equitable actions governs Bergholtz' claim of mistaken conveyance. Appellants argue that the statute of limitations began to run, at the latest, on June 1, 1993, when Saltsman quitclaimed his interest in the Hill Farm property to Bergholtz. Finomore v. Epstein (1984), 18 Ohio App.3d 88, 90-91
("a conveyance by quit-claim deed puts the grantee on notice that there may be defects in the title") (citation omitted).
 {¶ 43} Appellants, however, fail to consider Bergholtz' claim to quiet title, for which the limitations period is twenty-one years. R.C. 2305.04. Although judgment in Bergholtz' favor rests on the equitable creation of a resulting trust, the applicable statute of limitations is determined by the cause of action rather than the form of remedy. See Peterson v. Teodosio
(1973), 34 Ohio St.2d 161, 172 ("statutes of limitation attach to causes of action and not the remedial form in which the action is brought") (citation omitted).
 {¶ 44} The third assignment of error is without merit.
 {¶ 45} In their fourth and final assignment of error, appellants argue that the trial court erred by awarding Bergholtz $25,567.65 from Dunning-Marks on the ground that, "as the owner of the property," Bergholtz was "entitled to any income generated by the property." We agree.
 {¶ 46} The trial court awarded Bergholtz restitution in the amount $25,567.65 which Dunning-Marks had received from Buckeye as advance royalty payments made in anticipation of future profits from the mining of the coal. Although the trial court cited no authority for this order, the court's order is consistent with the law set forth in the Restatement of the Law 2d, Trusts, Section 292, Comment e, which provides that "[i]f the gratuitous transferee of trust property still has the property and has not so changed his position that it is inequitable to compel him to restore the property to the trust, he can be compelled to restore the property * * *. So also, he must pay to the trust any income which he has received from the property, if he has not so changed his position that it is inequitable to compel him to do so."
 {¶ 47} In the present case, the order of restitution to Bergholtz is an equitable remedy.[2] Bergholtz is not a party to the contract between Dunning-Marks and Buckeye pursuant to which the advance royalty payments were made to Dunning-Marks. Bergholtz has no legal claim to this money. Rather, Bergholtz' entitlement, if any, depends on restitution as an equitable remedy. "Restitution is available as an equitable remedy `where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular * * * property in the defendant's possession." Santos v. Ohio Bur. ofWorkers' Comp., 101 Ohio St.3d 74, 2004-Ohio-28, at ¶ 13, citingGreat-West Life Annuity Ins. Co. v. Knudson (2002),534 U.S. 204, 213. "[F]or restitution to lie in equity, the action generally must seek * * * to restore to the plaintiff particular funds or property in the defendant's possession." Id.
 {¶ 48} Consistent with these principles of equitable restitution is the Restatement's position in regard to the remedies available when a constructive trust is imposed. "In most cases where a constructive trust is imposed the result is to restore to the plaintiff property of which he has been unjustly deprived * * *; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which he was before the defendant acquired the property." Restatement of the Law, Restitution, Section 160, Comment d.
 {¶ 49} The balance of equities in the present case does not favor the award of restitution to Bergholtz. Dunning-Marks has been unjustly enriched by $25,567.65, but not at the expense of Bergholtz. The value of the Hill Farm property has not been lessened or compromised as a result of Dunning-Marks' lease with Buckeye. Bergholtz is made whole simply by quieting title in its favor. Nor has Dunning-Marks' claims to the Hill Farm property prevented Bergholtz from realizing profits for itself. Brown testified that he had no intention of marketing the coal right until he was approached by East Fairfield Gas Company in 2002. Apart from the costs of the present litigation, the erroneous transfer of the Hill Farm property to Dunning-Marks has not damaged Bergholtz economically. Cf. Giles v. Hanning, 11th Dist. No. 2001-P-0073, 2002-Ohio-2817, at ¶ 13 (to establish a claim for unjust enrichment it must be shown that plaintiff has conferred a benefit upon the defendant) (citation omitted). Dunning-Marks has been enriched at the expense of Buckeye, which has paid $25,567.65 to Dunning-Marks in anticipation of profits that it will never realize.
 {¶ 50} Other considerations also favor denying Bergholtz restitution of the royalty payments. Dunning-Marks is a completely innocent party. She took title to the Hill Farm property in good faith and without any notice of Bergholtz' interest. Nor could Dunning-Marks have known about Bergholtz' interest for the reason that Bergholtz never recorded that interest. Moreover, Bergholtz was aware of Dunning-Marks' interest as early as 1996 but chose not to pursue the matter at this time. Between Bergholtz and Dunning-Marks, Bergholtz is more culpable for the present situation. Cf. Laycock, The Scope and Significance of Restitution (1989), 67 Tex.L.Rev. 1277, 1289 ("The more culpable defendant's behavior, and the more direct the connection between the profits and the wrongdoing, the more likely that plaintiff can recover all defendant's profits."). It should not be rewarded for failing to record its interest and for waiting eight years to assert its rights by receiving $25,567.65 for marketing rights that it has never sought to develop or protect. To award Bergholtz the $25,567.65 in these circumstances would be to correct one inequity by a greater one.
 {¶ 51} Appellants' fourth assignment of error has merit.
 {¶ 52} For the foregoing reasons, appellants' first, second, and third assignments of error are without merit. The judgment of the lower court quieting title to the Hill Farm property in Bergholtz' favor is affirmed. Appellants' fourth assignment of error is with merit. The judgment against Dunning-Marks in the amount of $25,567.65 is reversed. Dunning-Marks remains entitled to $1,882.35 from Bergholtz for real estate taxes she paid on the Hill Farm property and which constituted a direct benefit to Bergholtz. Nowler v. Coit (1824), 1 Ohio 519, 523 ("[t]he court will not lend their aid to quiet the title, without securing to the defendant the moneys paid in preserving that title * * * which the owners ought to have paid"). Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part.
Cynthia Westcott Rice, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.
Coleen Mary O'Toole, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.
[1] Saltsman has no independent memory of how the Hill Farm property came to be titled in his name. After reviewing the evidence presented at trial, Saltsman believed that he was, in fact, holding the property in trust for Toledo Coke.
[2] Since the order of restitution is an equitable remedy, Bergholtz is not automatically entitled to money received by Dunning-Marks from Buckeye. Decisions in equity "are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Keystone Driller Co. v.Gen. Excavator Co. (1933), 290 U.S. 240, 245-246.