OPINION
{¶ 1} In this accelerated calendar case, appellant, Dena K. Woofter, appeals the judgment entered by the Domestic Relations Division of the Trumbull County Court of Common Pleas. The trial court entered its decree of divorce on September 27, 2005.
 {¶ 2} Appellant and appellee, James B. Woofter, were married in November 1992. There were two children born during the marriage. On appeal, there are no issues regarding the support and visitation of the children.
 {¶ 3} In 1995, the parties moved into a residence on Ridge Road in Newton Falls, Ohio ("Ridge Road property"). In 1994, Bernard Borowski purchased this property for $33,000. Borowski is the long-time boyfriend of appellee's mother, Natalie Pestalozzi. Borowski paid a down payment of approximately $6,000 and took out a mortgage to cover the remainder of the purchase price. From 1995 through May 1999, Borowski paid the mortgage payments, real estate taxes, and homeowner's insurance premiums on the Ridge Road property. In addition, from 1995 through 2003, Borowski and Pestalozzi paid over $19,000 for improvements to the Ridge Road property. Included in this sum was over $12,000 used to replace the roof and siding, which were completed between 1999 and 2003.
 {¶ 4} In 1998, Borowski allowed the parties to use the Ridge Road property as collateral to secure a $14,353.20 loan to pay off credit card debt. In March 1999, Pestalozzi loaned the parties $7,000. This loan was used to cover a business loss sustained by appellee. On May 13, 1999, Borowski transferred the property to the parties by quit claim deed. On May 25, 1999, the parties mortgaged the Ridge Road property for $44,000. The money from this mortgage was used to (1) pay off Borowski's mortgage, (2) pay off the balance of the home equity loan used for credit card debt, and (3) to repay the $7,000 loan to Pestalozzi. The parties did not reimburse Borowski for the down payment he made on the Ridge Road property.
 {¶ 5} On May 31, 1999, the parties separated. Appellant remained in the Ridge Road property with the children until November 2003. In January 2000, the parties transferred title to the Ridge Road property to Pestalozzi by quit claim deed. However, the mortgage remained in the parties' names.
 {¶ 6} From 1999 through July 2003, appellant would make partial or entire payments on the mortgage. This was done through Pestalozzi, who also was the bookkeeper at "Whiskers to Tails," a dog-grooming business. At that time, appellee was the registered owner of the dog-grooming business, and appellant was the primary employee. Pestalozzi would write checks either to herself (for partial mortgage payments) or directly to the mortgage company (for full mortgage payments). The amount of money Pestalozzi would apply toward the mortgage was determined by how successful the business was. Pestalozzi began claiming these payments as rental income on her 2003 tax returns. Appellee, as the registered owner of the dog-grooming business, reported income from the business on his tax returns. However, he did not actually receive this money.
 {¶ 7} Pestalozzi would baby-sit for the parties' children while appellant was at work. In July 2003, a disagreement arose between appellant and Pestalozzi. Appellant was upset with Pestalozzi, because Pestalozzi would allow appellee to visit with his children while she was baby-sitting. Appellant preferred to have the children be with appellee only during his court-ordered visitation. After July 31, 2003, appellant took over the bookkeeping duties for the dog-grooming business.
 {¶ 8} In August 2003, Pestalozzi took out a mortgage on the Ridge Road property. She used this money to pay off the mortgage that was in the parties' names. At the time it was paid off, the remaining balance on the parties' mortgage was $42,413. In the fall of 2003, Pestalozzi requested appellant and the children vacate the Ridge Road property. Pestalozzi later sold the property for $84,000.
 {¶ 9} The parties also owned a condominium in Cortland, Ohio. This was where the dog-grooming business was operated. Appellee purchased this condominium in 1991 for $37,000. He paid $3,000 as a down payment, and financed $34,000.
 {¶ 10} After appellee vacated the Ridge Road property, appellant filed two separate complaints for divorce. Both of these complaints were eventually dismissed. In February 2003, appellant filed a third complaint for divorce, resulting in the instant proceedings. Appellant named Pestalozzi as a third-party defendant. Pestalozzi was named as a third-party defendant, because appellant claimed she held the Ridge Road property in a constructive trust.
 {¶ 11} A hearing was held before the trial court. At the beginning of the hearing, the parties presented several stipulations to the trial court. The trial court approved these stipulations, which included the following. Neither party claimed an interest in the business of the other, which were Woofter Construction (appellee) and Whiskers to Tails (appellant). Both parties waived any claims for spousal support. The parties stipulated that the marriage terminated on May 31, 1999. There was a stipulation that the value of the condominium at the time of the termination of the marriage was $31,500. Finally, the parties stipulated to a variety of other issues that are not relevant to this appeal, such as the distribution of motor vehicles and personal property, the division of bank accounts, and the filing of tax returns.
 {¶ 12} Following the hearing, the trial court issued a decree of divorce. Therein, the trial court found that a constructive trust did not exist in regard to the Ridge Road property. The court concluded that appellee did not receive any of the profits from the dog-grooming business. The trial court found that appellant wished to retain the condominium and ordered her to pay appellee $8,118.81 for his interest in the condominium. Finally, the trial court ordered appellee to pay child support and outlined a visitation schedule for the children.
 {¶ 13} Appellant has timely appealed the trial court's judgment entry to this court. Appellant raises three assignments of error. Prior to individually addressing the assigned errors, we briefly address the stipulations made by the parties. "When approved by a trial court, stipulations eliminate the need for proof of that matter."[1] The parties stipulated that the marriage ended on May 31, 1999 and that the value of the condominium at that time was $31,500. Since these stipulations were approved by the trial court, we will base our analysis of the assigned errors on them.
 {¶ 14} Appellant's first assignment of error is:
 {¶ 15} "The trial court erred in failing to establish a constructive trust over the Ridge Rd. property."
 {¶ 16} Appellant claims a constructive trust was created when the parties transferred the Ridge Road property to Pestalozzi by quit claim deed.
 {¶ 17} This court reviews a trial court's determination regarding the existence of a constructive trust on a manifest weight of the evidence standard.[2] "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."[3]
 {¶ 18} "A constructive trust is a `"trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice."'"[4]
 {¶ 19} "The party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence."[5] This burden includes adequately tracing the relevant assets.[6]
 {¶ 20} One of the primary purposes of a constructive trust is to remedy an unjust enrichment.[7] In this matter, we conclude the trial court did not err by declining to impose a constructive trust, because Pestalozzi was not unjustly enriched.
 {¶ 21} The Ridge Road property was conveyed, by quit claim deed, to the parties on May 13, 1999. The marriage ended on May 31, 1999. Thus, the parties only owned the property as a married couple for 18 days. Further, the parties transferred title of the property to Pestalozzi, again by quit claim deed, in January 2000. In total, the parties owned the property for less than eight months.
 {¶ 22} From January 2000 to July 2003, appellant made payments toward the mortgage of the property. Some of these payments were partial payments, while others were the total mortgage payment of $413. Pestalozzi testified that, at the time the property was transferred to her, she and appellant agreed that appellant would continue to pay the mortgage payments as rent.
 {¶ 23} On appeal, appellant argues that Pestalozzi did not pay any consideration for the property. We strongly disagree. Pestalozzi took out a mortgage and used the money to pay off the balance of the parties' mortgage on the property, in excess of $42,000.
 {¶ 24} Appellant also argues that she should be entitled to a portion of the $41,000 gain Pestalozzi made when she sold the property for $84,000. First, we note that Pestalozzi's "gain" was nowhere close to $41,000 after other factors are taken into consideration, including: (1) the amount the first mortgage was paid down by Borowski, (2) Borowski's $6,000 down payment, (3) the improvements Pestalozzi and Borowski made to the property while the parties lived there, which were in excess of $19,000, and (4) any subsequent improvements made after appellant vacated the residence. Also, to the extent Pestalozzi did make money on the sale of house, appellant has not demonstrated that she is entitled to it. The property was purchased from a third party in 1994 and sold in 2004. With the exception of the eight-month period in 1999, the property was owned by Borowski or Pestalozzi the entire time.
 {¶ 25} Further, we note that, through the process of the property being transferred from Borowski to the parties to Pestalozzi, the parties were able to effectively eliminate $18,000 in debt (the equity line of credit used for the credit card debt with an approximate balance of $11,000 was paid off, and the parties' $7,000 loan from Pestalozzi was repaid).
 {¶ 26} Appellant failed to meet her burden of demonstrating the existence of a constructive trust.
 {¶ 27} The trial court did not err by failing to impose a constructive trust in relation to the Ridge Road Property.
 {¶ 28} Appellant's first assignment of error is without merit.
 {¶ 29} Appellant's second assignment of error is:
 {¶ 30} "The trial court erred in failing to divide all of the marital assets."
 {¶ 31} In this assignment of error, appellant claims the trial court failed to divide the "profits" from the dog-grooming business. Appellant claims these profits are marital assets and should be divided equally between the parties.
 {¶ 32} "A trial court has broad discretion in making divisions of property in domestic cases.[8] A trial court's decision will be upheld absent an abuse of discretion.[9]
`Abuse of discretion' is more than an error in law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion.[10] If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion."[11], [12]
 {¶ 33} Initially, we note that this argument concerns matters that fall outside of the time period of the marriage. Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both spouses during themarriage."[13] The parties stipulated that the marriage ended on May 31, 1999. On appeal, appellant claims that the profits from the pet grooming business for the years 2000 through 2003 were unaccounted for. By definition, these profits were not marital property, because they were not acquired by the parties "during the marriage."[14]
 {¶ 34} Moreover, even if this matter is addressed, appellant was not entitled to additional funds. Appellee, as owner of the business, claimed profits from the business, in the range of $2,900 to $6,700, per year, on his income tax returns. Pestalozzi, who kept the books at the dog-grooming business, testified that appellee never received any payments from the business. She testified that all the money remained in the business. Likewise, appellee testified he never received this money.
 {¶ 35} We note that Pestalozzi testified she was writing checks from the business account to pay for appellant's car payment and for the mortgage payment on the Ridge Road property, where appellant was living. As such, the profits from the business were presumably spent for appellant's benefit.
 {¶ 36} There was competent, credible evidence, in the form of Pestalozzi's and appellee's testimony, that appellee did not receive this money. Thus, the trial court did not abuse its discretion by failing to divide the "profits" from the dog-grooming business.
 {¶ 37} Appellant's second assignment of error is without merit.
 {¶ 38} Appellant's third assignment of error is:
 {¶ 39} "The trial court erred and abused its discretion in failing to apply the market value formula in determining marital equity."
 {¶ 40} The trial court erred by solely using the amount the mortgage was paid down to determine the parties' respective interest in the property. Rather, the trial court should have determined what the parties' total equity in the property was. This is especially true in a case such as this, where the value of the property has decreased during the marriage.
 {¶ 41} The trial court adequately accounted for the amount the mortgage was paid down. However, this is only one of the factors to be used to determine equity in real estate. The second factor is the amount of appreciation or, as in this case, depreciation of the property.[15]
 {¶ 42} At the time of the termination of the marriage, the stipulated value of the condominium was $31,500. The condominium was encumbered with $22,862.39 in mortgage debt. After the trial court's calculations, appellant was ordered to pay appellee $8,118.81. Thus, at the end of the day, appellant received a property valued at $31,500 and assumed a total debt of $30,981.20. If the trial court's calculations are upheld, appellant would only receive $518.80 as her marital interest in the condominium.
 {¶ 43} Appellee was able to provide evidence properly tracing his down payment of $3,000 on the condominium. Therefore, this $3,000 interest in the property was appellant's separate property.[16] The value of a party's separate property interest may increase due to a passive appreciation in the value of the property.[17] Logically, the inverse of this rule also applies, and the separate property value may decrease due to a depreciation of the entire property. Thus, the trial court was correct in adjusting the value of appellee's separate property.
 {¶ 44} Through his $3,000 down payment, appellee had approximately an 8.1 percent interest in the condominium as his separate property. The value of the condominium decreased from $37,000 at the beginning of the marriage to $31,500 at the end of the marriage. Thus, the value of his separate property was 8.1 percent of the final value of the condominium ($31,500), or approximately $2,550, at the termination of the marriage. Accordingly, the trial court did not abuse its discretion in determining that the value of appellee's separate property interest in the condominium was $2,550.
 {¶ 45} At the conclusion of the marriage, the total value of the condominium was $31,500. After appellee's separate property interest of $2,550 is subtracted, the marital value of the condominium was $28,950. This portion of the property was still subject to a mortgage of $22,862.39. Thus, the marital equity in the property was $6,087.61. Since this equity was marital property, it is divided between the parties.[18] After division, each party's respective share of the marital portion of the equity in the condominium was $3,043.80. Appellee's total share of the condominium is his marital share of $3,043.80 plus his separate property interest of $2,550, for a total of $5,593.80. Appellant owes appellee $5,593.80. After this payment, appellant is left with a condominium valued at $31,500, with a total debt against it of $28,456.19 ($22,862.39 in mortgage debt plus $5,593.80 owed to appellee). Therefore, in regard to appellant, the property has an equitable value of $3,043.80 ($31,500 value minus debt of $28,456.19), which is equal to her share of the marital portion of the equity in the property.
 {¶ 46} The trial court abused its discretion by failing to account for the depreciation of the condominium when dividing the marital equity.
 {¶ 47} Appellant's third assignment of error has merit to the extent indicated.
 {¶ 48} The judgment of the trial court is modified with respect to the amount appellant owes appellee to purchase his interest in the condominium. Instead of the amount of $8,118.81 set forth by the trial court, appellant owes appellee $5,593.80 for his interest in the condominium. In light of this modification, the judgment of the trial court is affirmed.
Cynthia Westcott Rice, J., Colleen Mary O'Toole, J., concur.
[1] Alteno v. Alteno, 11th Dist. No. 2002-T-0109,2004-Ohio-1179, at ¶ 15, citing Chitwood v. Univ. Med. Ctr.,Gen. Div. (May 5, 1998), 10 Dist. No. 97AP109-1235, 1998 Ohio App. LEXIS 2106, at *40.
[2] Bergholtz Coal Holding Co. v. Dunning, 11th Dist. No. 2004-L-209, 2006-Ohio-3401, at ¶ 26.
[3] C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus.
[4] (Footnotes omitted by Supreme Court of Ohio.) Estate ofCowling v. Estate of Cowling, 109 Ohio St.3d 276,2006-Ohio-2418, at ¶ 18, quoting Ferguson v. Owens (1984),9 Ohio St.3d 223, 225, quoting 76 American Jurisprudence 2d (1975), 446, Trusts, Section 221.
[5] Estate of Cowling v. Estate of Cowling,109 Ohio St.3d 276, at ¶ 20, citing Univ. Hosps. of Cleveland, Inc. v. Lynch,96 Ohio St.3d 118, 2002-Ohio-118, paragraph three of the syllabus.
[6] Estate of Cowling v. Estate of Cowling,109 Ohio St.3d 276, at ¶ 22-23.
[7] Ferguson v. Owens, 9 Ohio St.3d at 226.
[8] Berish v. Berish (1982), 69 Ohio St.2d 318.
[9] Holcomb v. Holcomb (1989), 44 Ohio St.3d 128; Martin v.Martin (1985), 18 Ohio St.3d 292, 294-295.
[10] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[11] Ross v. Ross (1980), 64 Ohio St.2d 203.
[12] Middendorf v. Middendorf (1998), 82 Ohio St.3d 397,401.
[13] (Emphasis added.) R.C. 3105.171(A)(3)(a)(i).
[14] Id.
[15] See Landis v. Landis (Feb. 23, 1994), 9th Dist. No. 93CA005568, 1994 Ohio App. LEXIS 750, at *8.
[16] R.C. 3105.171(A)(6)(a)(ii).
[17] Munroe v. Munroe (1997), 119 Ohio App.3d 530, 537-538. See, also, R.C. 3105.171(A)(6)(a)(iii).
[18] R.C. 3105.171(C)(1).