OPINION
{¶ 1} Appellant, Smurfit Stone Container Corporation ("Smurfit"), appeals the judgment entries of the Ashtabula County Court of Common Pleas, that appellee, Clifton Means ("Means"), was entitled to receive workers' compensation benefits, and denial of its motions for directed verdict, judgment notwithstanding the verdict, or new trial.
 {¶ 2} On February 11, 2002, Means, a maintenance mechanic employee of Smurfit, injured his lower back when he was attempting to free up a starch pump pulley with a pipe wrench causing immediate pain in his lower back. Means filed a workers' compensation claim for an acute lumbosacral sprain, which was granted. On August 26, 2002, he filed an additional claim for workers' compensation for aggravation of a pre-existing lumbar degenerative disc disease, arising from the earlier injury. This claim, along with his subsequent appeals, was denied. Once his administrative remedies were exhausted, Means filed a complaint and appeal in the Ashtabula County Court of Common Pleas.
 {¶ 3} A jury trial commenced on May 5, 2004, on the sole issue of whether the February 11, 2002 work related injury caused an aggravation of Means's pre-existing lumbar degenerative disc disease. At the trial, the jury was shown videotaped depositions from three physicians who rendered medical opinions as to whether Means's work related injury aggravated his pre-existing degenerative disc disease. Dr. Gregory Ray ("Dr. Ray") and Dr. Jeffrey Shall, ("Dr. Shall") testified for Means. Dr. Ray, a chiropractor, had treated Means for the past several years, for back, neck, and shoulder pain. He treated Means the day after he was injured and over the course of the next several months. When asked his opinion based upon a reasonable degree of chiropractic certainty, of the cause of Means's aggravation of his pre-existing degenerative disc disease, Dr. Ray testified that it was "definitely" aggravated by the injury. During the course of his treatment following the injury, Dr. Ray recommended that Means seek a medical evaluation by an orthopedic surgeon, Dr. Shall. On July 5, 2002, Dr. Shall performed a physical exam on Means and reviewed X-ray and MRI films taken of his spine. At trial, Dr. Shall testified that within a reasonable degree of medical certainty, that the injury "caused the aggravation of [Means's] pre-existing degenerative disc disease." At the conclusion of Means's case, Smurfit moved for a directed verdict, which was overruled.
 {¶ 4} Smurfit presented the testimony of Dr. Dean Erickson ("Dr. Erickson"), who primarily practices in the specialty of occupational medicine. He examined Means on May 8, 2002, and October 24, 2002, and conducted a review of Means's medical history and records. Dr. Erickson testified that, within a reasonable degree of medical certainty, he did "not believe that [Means] sustained an aggravation of his pre-existing degenerative disk disease of the lumbar spine due to the injury[.]"
 {¶ 5} On May 6, 2004, the jury returned a verdict in which seven of its eight members concurred by finding that Means was entitled to participate in the workers' compensation fund for the condition of aggravation of pre-existing degenerative disc disease of the lumbar spine. The trial court rendered judgment on the verdict on May 7, 2004. On May 21, 2004, Smurfit filed a motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial. On June 16, 2004, the trial court entered a judgment entry overruling Smurfit's motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial.
 {¶ 6} Smurfit filed a timely appeal and asserts the following assignments of error:
 {¶ 7} "[1.] The trial court erred in denying Smurfit's motion for directed verdict.
 {¶ 8} "[2.] The trial court erred in denying Smurfit's motion for judgment notwithstanding the verdict, or for a new trial."
 {¶ 9} Smurfit's two assignments of error are interrelated and shall be addressed in a consolidated fashion.
 {¶ 10} In determining whether to grant either a directed verdict or judgment notwithstanding the verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is made and overrule the motion where reasonable minds may reach different conclusions. Posin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. Id. Civ.R. 50(B) provides: "* * * no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence."
 {¶ 11} Smurfit further argues that the trial court erred by failing to sustain their motion for a new trial pursuant to Civ.R. 59(A)(6). Civ.R. 59(A)(6) allows the trial court to order a new trial if the judgment is not sustained by the weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Const. Co.
(1978), 54 Ohio St.2d 279, syllabus. The decision to grant or deny a motion for a new trial under Civ.R. 59(A) is within the sound discretion of the trial court. Sharp v. Norfolk W. Ry. Co., 72 Ohio St.3d 307, 312, 1995-Ohio-224. Absent a showing of an abuse of discretion, the trial court's decision will not be disturbed on appeal. Verbon v. Pennese
(1982), 7 Ohio App.3d 182, 184. An abuse of discretion connotes more than an error of law or judgment; rather it implies that the judgment can be characterized as unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. When determining whether the trial court has abused its discretion, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-120.
 {¶ 12} Smurfit asserts that Means presented no competent, credible evidence to establish a causal connection between the aggravation of his pre-existing lumbar condition and his work related injury. Smurfit specifically argues that both Dr. Shall, and Dr. Ray, rendered their medical causation opinions on the basis of Means's inaccurate and incomplete medical history.
 {¶ 13} Smurfit alleges that Dr. Shall rendered his medical opinion without reviewing Means's past medical history, including thirty years of previous chiropractic treatment. Smurfit further contends that neither Dr. Ray nor Dr. Shall were aware of Means's visits to his family doctor, between 1999 and the date of the injury in February 2002. However, Means testified that he sought no treatment for his degenerative disc condition of his lumbar spine between 1999 and the date of the injury.
 {¶ 14} Dr. Ray testified that in his opinion, based upon a reasonable degree of chiropractic certainty, the injury aggravated Means's pre-existing condition. Dr. Ray was familiar with Means and his lower back condition. He testified that he reviewed Means's prior records when he began treating Means in 1995. He had not seen Means for any low back treatment since December 1999. On February 12, 2002, one day after the injury, he examined Means. He testified that Means was "experiencing constant low severe pain with sharp shooting pains * * * he was having trouble walking, his legs would buckle." He further testified that there was a "significant difference" in Means's low back condition after the injury.
 {¶ 15} Dr. Shall also testified that Means's injury aggravated his pre-existing degenerative disc disease. Dr. Shall interpreted Means's MRI films that revealed a "marrow inflammation," which he attributed to the injury. He testified that he conducted a physical examination of Means, and reviewed with Means his prior medical history. Both Dr. Ray and Dr. Shall were clearly aware of Means's diagnosis of pre-existing degenerative disc disease of his lumbar spine. In contrast, Smurfit presented the testimony of Dr. Erickson, who examined Means, reviewed his medical records and concluded that the injury did not aggravate Means's pre-existing condition.
 {¶ 16} Smurfit was able to raise issues of credibility through cross-examination of both Dr. Ray, Dr. Shall, and Means, which the jury was able to resolve. Construing the evidence most strongly in Means's favor, we conclude that reasonable minds could differ as to whether Means's work related injury caused an aggravation of his pre-existing degenerative disc disease, and the issue was properly submitted to the jury. Thus, the trial court did not err in overruling Smurfit's motions for a directed verdict and for judgment notwithstanding the verdict. Further, there was competent, credible evidence to support the jury's conclusion that the injury aggravated Means's pre-existing condition, and he was entitled to participate in the workers' compensation program; thus, the trial court did not abuse its discretion by overruling Smurfit's motion for new trial. Accordingly, Smurfit's first and second assignments of error are without merit.
 {¶ 17} Based upon the foregoing, the judgment of the Ashtabula County Court of Common Pleas is affirmed.
O'Neill, J., Rice, J., concur.