OPINION
{¶ 1} Appellant, James Conrad, the Administrator of Bureau of Workers' Compensation, appeals from the judgment of the Portage County Court of Common Pleas entered following a trial by jury permitting appellee, Matthew Chilson, to participate in the state workers' compensation fund.
 {¶ 2} On September 29, 1999, appellee was performing his job duties as a cement truck driver when he twisted his right knee dismounting a ladder attached to his truck. Appellee testified he was removing excess debris from the exterior of the "hopper" and "drum" after it was filled with cement. As he descended the final step of the ladder, he placed his right leg on uneven ground and it twisted under his weight. Appellee's leg gave way and he tumbled to the ground where he remained for several minutes. Appellee testified a co-worker observed him after he fell and exclaimed "`Man, I know what that feels like. That must have hurt like a' — [.]"
 {¶ 3} Appellee ultimately stood up but was unable to walk without significant pain. Appellee went to the office to report the incident, however, his boss was not in the office at that time. Instead, he told his dispatcher the details and explained he was in a lot of pain. The dispatcher asked if he was able to "finish the load or finish the day out" to which appellee responded "I don't know, but I am going to try."
 {¶ 4} Appellee finished his work day despite the pain and, once he returned home he noticed his knee was visibly swollen, warm, and had a purple discoloration. Appellee testified he could not walk on the leg and required the assistance of walls and door jambs for balance. Appellee testified he believed the swelling and pain would decrease on its own if he took ibuprofen and iced the injury. When asked why he did not immediately get medical assistance he replied "what's the sense." Appellant testified:
 {¶ 5} "I just learned to deal with pain. I had an incident where I hurt my other leg, my left leg, I went to [the] doctor for it, it was — to me it was a waste of time. I mean, he told me something that I already knew. I paid him his money, he got his money and that was it. The pain went away in a few days."
 {¶ 6} Moreover, appellee's wife testified appellee tends to "endure pain" and does not like to miss work because "the bills don't get paid."
 {¶ 7} In any event, the pain persisted and, on October 15, 1999, sixteen days after the original accident, appellant's knee again gave out at work. Appellant testified his injured leg would no longer hold his weight and "[t]hat was it. I was done. It was swelled up twice as bad and I couldn't put hardly any pressure on it at all." At this point, appellee went to the doctor. After examination, appellee was advised he had an acute knee sprain with several ligament tears which required surgery.
 {¶ 8} Appellee duly filed a claim for compensation with the Bureau of Workers' Compensation which was denied on November 17, 1999. After exhausting all appeals to the Industrial Commission, appellee filed a notice of appeal with the Portage County Court of Common Pleas pursuant to R.C. 4123.512. After voluntarily dismissing his original appeal pursuant to Civ.R. 41(A), appellant re-filed on February 26, 2003.
 {¶ 9} In his "Petition in Appeal," appellee alleged that, on September 29, 1999, he was injured during the course and scope of his employment with his employer. On March 29, 2005, the matter was tried to a jury where appellee submitted testimony from himself and his wife. Appellant rested without presenting evidence. After the close of evidence, appellant moved the trial court for a directed verdict. In support of his motion, appellant argued appellee failed to supply necessary expert medical testimony to support a causal relationship between his accident at work and the right knee injury he claimed he sustained as a result of the accident. The trial court denied appellant's motion, ruling from the bench:
 {¶ 10} "[T]he Court feels that the layman has enough information from being alive and living in the society, to know a little about a sprained ankle or a sprained knee, and what happens when that happens, and causes swelling and limping and that type of thing. And it's not necessary to have a medical opinion on those issues alone and might be as to what happened inside the knee, but not for the purposes that we're here today to determine whether or not there was some injury. And if they choose to believe the plaintiff, he did have this injury, and it did happen in the course and scope of his employment, then that's a matter of credibility."
 {¶ 11} The jury eventually returned a verdict in appellee's favor. On March 30, 2005, the trial court filed its judgment entry after which appellee moved the court for a judgment notwithstanding the verdict or, in the alternative, for a new trial. On April 26, 2005, these motions were also denied.
 {¶ 12} Appellant now appeals and asserts the following assignment of error:
 {¶ 13} "The trial court erred in denying defendant-administrator's motion for directed verdict and its motion for judgment notwithstanding the verdict, or in the alternative for a new trial, because plaintiff-appellee did not meet its burden of proving medical causation by using expert medical testimony."
 {¶ 14} "[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994),68 Ohio St.3d 521, 526; Keeton v. Telemedia Co. of S. Ohio (1994),98 Ohio App.3d 405, 408. If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus; * * *." Darroch v. Smyth, Cramer Co.
(Apr. 3, 1998), 11th Dist. No. 96-L-212, 1998 Ohio App. LEXIS 1450, at 7-8. "A motion for directed verdict presents a question of law that an appellate court reviews de novo." Celmer v.Rodgers, 11th Dist. No. 2004-T-0074, 2005-Ohio-7054, at ¶ 27.
 {¶ 15} We also note a motion for judgment notwithstanding the verdict is reviewed under the same standard as that of a motion for a directed verdict. Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 679; see, also, Blatnikv. Dennison, 148 Ohio App.3d 494, 504, 2002-Ohio-1682.[1]
 {¶ 16} Under his sole assignment of error, appellant contends appellee was required to provide expert medical testimony to prove the event or accident in question caused the injury for which he is seeking workers' compensation. In support, appellant argues that causation, under the circumstances, was sufficiently complex to be beyond the knowledge and experience of the jury and therefore necessitated scientific medical testimony.
 {¶ 17} Generally, "where an issue in a case involves a question of scientific inquiry which is not within the knowledge of lay witnesses or members of the jury, expert testimony is required to furnish the answers." Stacey v. TheCarnegie-Illinois Steel Corp. (1951), 156 Ohio St. 205. However, where the causal connection between an injury and its specific modality involve questions which are matters of common knowledge, expert medical testimony is unnecessary. White Motor Corp. v.Moore (1976), 48 Ohio St.2d 156.
 {¶ 18} To assist in making a competent legal distinction on this issue, this court has observed:
 {¶ 19} "It is when the internal complexities of the body are at issue that we generally initiate the metamorphosis in the evidential progression where medical testimony moves from the pale of common knowledge matters and within layman competency where expert testimony is not required, to those areas where such testimony is more appropriate and indeed most necessary for the trier of fact to understand the nature and cause of the injuries. * * *" Gibbs v. General Motors Corp. (Mar. 27, 1987), 11th Dist. No. 3625, 1987 Ohio App. LEXIS 6288, at 4.
 {¶ 20} Therefore, the relevant distinction regarding the character of the injury is whether it is readily observable or understandable or the injury is "internal and elusive in nature, unaccompanied by any observable external evidence." Davis v.Morton Thiokol, Inc. (Nov. 1, 1991), 11th Dist. No. 90-L-15-083, 1991 Ohio App. LEXIS 5270, at 6; see, also, Canterbury v.Skulina (Dec. 7, 2001), 11th Dist. No. 2000-P-0060, 2001 Ohio App. LEXIS 5442, at 12.
 {¶ 21} In appellant's view, the sprain appellee suffered is an internal injury that cannot be proximately related to his accident at work without expert testimony. In support, appellant relies heavily on our holding in Gibbs.
 {¶ 22} In Gibbs, the claimant, an assembler at an automobile manufacturing plant, asserted he injured his back while removing a 15 to 20 pound part from an automobile engine. He accordingly filed a claim seeking to participate in the workers' compensation fund for "chronic strain and sprain of low back." The claimant provided no expert medical testimony as to the causal relationship between the alleged injury and his job duties. After trial, the jury returned a verdict in the claimant's favor. On appeal, this court reversed and remanded the matter holding the back strain was "internal and elusive in nature, unaccompanied by any observable external evidence." Id. at 4.
 {¶ 23} Appellant contends that this case parallels Gibbs
because both involve claimants who sought to participate in the fund as a result of "strains." Moreover, the claimant in Gibbs,
like appellee herein, did not present expert medical testimony connecting his strain to his alleged accident at work. However, contrary to appellant's exhortations, we do not believe Gibbs
presents a sound analogy to the instant case.
 {¶ 24} First, in Gibbs, it is unclear whether the claimant substantiated his claim at trial with medical records. Alternatively, in the instant matter, appellee submitted two medical reports detailing the documented etiology of the injury in conjunction with the reporting physician's observations of swelling and redness/inflammation of the skin of the affected area. Furthermore, the claimant in Gibbs had no "observable external evidence" of the injury on which he based his claim to participate in the fund. Here, both appellee and his wife testified that the affected area of appellee's leg was swollen subsequent to twisting his knee; moreover, appellee further testified his knee was warm to the touch and exhibited a purple discoloration after the initial injury. This testimony, in conjunction with the evidence of the medical reports, is sufficient to demonstrate appellee's injury was accompanied by readily observable, external evidence. Accordingly, appellant's reliance on Gibbs is misplaced.
 {¶ 25} Notwithstanding these salient distinctions, Gibbs
involved a lower back strain. The cause of a back strain is not typically relatable to one efficient "Newtonian" causal agent. As appellee notes, "[o]besity, bad posture, sleeping on an inadequate mattress, and poor physical conditioning are all sources of developing lower back pain without some traumatic event." Furthermore, it is frequently difficult, if not impossible, to verify back pain because inflammation is rarely visible to the naked eye. Accordingly, it is not remarkable a court would require a medical expert to guide the factfinder on issues of causation where a claimant is seeking workers' compensation for a back strain.
 {¶ 26} The instant matter involves a readily observable knee strain. Appellee alleged a sudden, accidental event occurring "in the course of and arising out of" his employment. Under the circumstances, we believe the proximate causal relationships are sufficiently apparent as to be within the realm of common or lay knowledge thereby eliminating the need for expert medical testimony. Phrased differently, when observed objectively, the facts surrounding appellee's injury are within the knowledge and experience of an average individual and therefore lay testimony is sufficiently probative to establish the relationship necessary for participation in the Ohio Workers' Compensation Fund. We accordingly hold the trial court neither erred nor abused its discretion in overruling appellant's assorted motions; hence, appellant's sole assignment of error is without merit.
 {¶ 27} For the reasons set forth above, appellant's assignment of error is overruled and the judgment of the Portage County Court of Common Pleas is affirmed.
Ford, P.J., Grendell, J., concur.
[1] Moreover, appellant's alternative motion for a new trial was grounded upon Civ.R. 59(A)(6) which allows a trial court to order a new trial if the judgment is not sustained by the weight of the evidence. We review a trial court's decision to grant or deny a Civ.R. 59(A) motion for an abuse of discretion. Means v.Smurfit-Stone Container Corp. 11th Dist. No. 2004-A-0048,2005-Ohio-6159, at ¶ 11.