MARKS, Appellee,

v.

SWARTZ, Appellant.

[Cite as *Marks v. Swartz,* 174 Ohio App.3d 450, 2007-Ohio-6009.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2007–T–0008.

Decided Nov. 9, 2007.

452

Martin F. White, for appellee.

Dean E. Swartz, pro se.

———————————

CYNTHIA WESTCOTT RICE, Presiding Judge.

{¶ 1} Appellant, Dean E. Swartz, appeals from the judgment entry of the Trumbull County Court of Common Pleas, entering a verdict in favor of appellee, Ronald Marks, after trial by jury. We affirm.

{¶ 2} In 1998, appellee was contacted by appellant, an attorney from Washington, D.C. Appellant indicated that he was pursuing several cases involving asbestos litigation in the Trumbull County Court of Common Pleas. Appellant was aware of appellee's experience and reputation and was interested in hiring appellee as local counsel to assist him in the asbestos litigation. Appellee advised appellant that he had no experience in asbestos litigation. Appellant was not concerned about appellee's lack of experience in this area of tort and indicated that he would shoulder primary responsibility for all aspects of the litigation. Appellant agreed to pay appellee 25% of all attorney fees generated from the cases in which he served as local counsel. The agreement was memorialized on May 13, 1998, by a letter sent by appellant.

{¶ 3} Shortly thereafter, appellee received a large box of materials from appellant containing documents related to a pending case involving the death of one Michael Missik. Appellee reviewed the materials and began acquainting himself with issues that arise in asbestos litigation. During appellee's involvement in the Missik case, he also became involved in three other asbestos-related cases with appellant: the Kubik case, the Lukac case, and the Barone case.

{¶ 4} On June 22, 1999, the parties entered into a second agreement, similar to the Missik agreement, regarding the Lukac case. Pursuant to the agreement, appellant was to serve as lead counsel on the case and shoulder the primary responsibility for all litigation and trial matters. As in the Missik agreement, appellee was to function as "local counsel" and "second chair" throughout discovery and trial and provide any "suggestions concerning the conduct of the case." The agreement also stated that any fees received from the litigation would be split 75% for appellant and 25% for appellee. The agreement further stated that Mr. Lukac had been previously informed of appellant's intent to hire appellee; while the document indicated that it had been "seen" by Lukac, it did not state that he agreed to its contents.

{¶ 5} From the early stages of their relationship, appellee recognized that appellant was a hard worker. Appellant telephoned appellee often and asked him to perform tasks immediately. Although appellee offered his assistance in

constructing trial strategies and deposing witnesses, appellant preferred to handle these matters alone. Appellant utilized appellee to interview jurors and relied upon appellee for his relationship with local court employees and judges. The evidence indicates that through May 2003, appellee did all that was asked of him and appellant was pleased with his assistance.

{¶ 6} The Missik case ultimately went to trial and resulted in a large verdict for the plaintiff. Appellant expressed appreciation to appellee for his assistance and paid him the agreed 25% of the attorney fees for his services. In a letter dated May 25, 2001, appellant stated: "Your skill, expertise, and friendship have been greatly appreciated. You have proven to be the most valuable 'local' counsel with whom I have ever worked. Thanks!!"

{¶ 7} In a letter dated January 9, 2003, appellant sent appellee another check representing 25% of the attorney fees arising from settlements with defendants in the Kubik and Lukac cases. Again, appellant expressed his laudatory thanks, stating: "It goes without saying that it has been a pleasure working with you. Let's kick some major butt in the upcoming trials!"

{¶ 8} In February 2003, the Kubik claim against the John Crane Company came for trial and resulted in a defense verdict. Following the loss, appellee began interviewing the jury panel to determine what had gone wrong in the Kubik case that had gone right in the Missik case. Appellant was crestfallen and considered abandoning his role as lead counsel on the remaining Lukac claim. However, appellee convinced appellant to stay and move forward.

{¶ 9} In May 2003, the trial of *Lukac v. John Crane Co.* was scheduled to commence. Prior to the Lukac trial, appellee reviewed jury questionnaires and was available for any work assigned to him. In the meantime, appellee had been retained, on short notice, for a separate medical-malpractice case relating to an individual who had lost his leg. That case was scheduled for a trial in June 2003.

{¶ 10} Appellant was present at all stages of the Lukac trial, just as he was during the Missik & Kubik cases. During trial, appellee brought a trial notebook to take notes and write down ideas. Appellee utilized a similar notebook in all of his cases. On one day, appellee placed several articles pertaining to his malpractice case in the notebook. Appellant noticed the materials but did not say anything at the time. Appellee asserted that he had the articles within the notebook because he planned to take them home with him after he left the court house.

{¶ 11} After deliberations, the jury awarded a verdict in Lukac's favor for $1,250,000 in compensatory damages and $500,000 in punitive damages. After the verdict was announced, the parties and Lukac went to a local pub for a drink. After ordering, appellant asserted, in front of Lukac, that he wanted to speak

with appellee regarding his unethical conduct at trial. Appellee maintained that he had no idea what appellant was referring to. Appellee demanded that appellant retract his allegation; appellant refused and, seven days later, appellee announced that he would no longer serve as co-counsel with appellant. Subsequently, on June 19, 2003, appellant wrote appellee indicating that his allegation pertained to appellee's use of a trial notebook that contained articles not related to the Lukac case. In his letter, he stated that he might have "over-reacted" when he observed "non-case related material in [appellee's] *Lukac* trial notebook." At the close of this letter, appellant asked appellee to consider "in light of the relative amount of work that you and I have done, whether the 75/25% fee distribution is still reasonable."

{¶ 12} On August 18, 2003, appellant formally fired appellee, thereby relieving him of his obligations as local counsel. At this point, motions for judgment not withstanding the verdict ("JNOV") and a new trial were still pending in the Lukac matter. Once the motions were overruled, appellant was able to negotiate a post-verdict settlement with the defendant in the Lukac matter. Appellant received $500,000 in fees resulting from the settlement. Appellee was never paid for his work in the Lukac litigation.

{¶ 13} On January 12, 2004, appellee filed suit against appellant for breach of contract. Appellant filed a motion to dismiss the matter on the grounds that DR 2–107 of the Ohio Code of Professional Responsibility deprived the Trumbull County Court of Common Pleas of subject-matter jurisdiction. Appellant did not seek a stay of the proceedings pursuant to R.C. 2711.02(B). After appellant's motion to dismiss was denied, he filed his answer, which included a jury demand. During the pendency of the action, appellant filed a motion for summary judgment, repeating the jurisdictional arguments. This motion was denied.

{¶ 14} The case proceeded to a jury trial on November 6, 2006. After appellee rested, appellant moved for directed verdict, again asserting his jurisdictional challenge. The motion was overruled, and the jury returned a verdict in appellee's favor and awarded him damages in the amount of $155,000. On November 8, 2005, the trial court entered judgment on the verdict. On November 13, 2006, appellee filed a motion for prejudgment interest. On February 8, 2007, the trial court granted the motion and awarded appellee $18,125 in prejudgment interest.

{¶ 15} Appellant assigns three errors for our review. Appellant's first assignment of error provides:

{¶ 16} "The trial court erred to the prejudice of defendant-appellant in overruling his motion for directed verdict at the close of plaintiff-appellee's case."

■ {¶ 17} Under his first assignment of error, appellant argues that the trial court lacked subject-matter jurisdiction over the underlying dispute because, in his view, DR 2–107(B) mandates that the matter be resolved via mediation or arbitration.[1] In response, appellee asserts that the agreement into which the parties entered is not governed by DR 2–107(B); rather, appellee argues that the instant action involved a simple breach of contract. For the following reasons, we hold that appellant's failure to move for a stay functioned to waive any alleged right to arbitration.

■ {¶ 18} "Waiver as applied to contracts is a voluntary relinquishment of a known right." *White Co. v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 5 O.O. 548, 2 N.E.2d 501, at paragraph one of the syllabus. Although waiver of arbitration will not be inferred lightly, a party does so if he is aware of his rights and acts inconsistently with those rights. *Blackburn v. Citifinancial, Inc.,* 10th Dist. No. 05AP–733, 2007-Ohio-1463, 2007 WL 927222, at ¶ 17.

■ {¶ 19} In the instant matter, we recognize that appellant, in an attempt to preserve his alleged right to arbitrate the dispute pursuant to DR 2–107, sought to dismiss the underlying suit prior to filing his answer. However, courts have held that in order for a potential defendant to preserve an alleged right to arbitrate a dispute, he or she must apply for a stay of the legal proceedings pending arbitration pursuant to R.C. 2711.02. *Mills v. Jaguar–Cleveland Motors, Inc.* (1980), 69 Ohio App.2d 111, 113, 23 O.O.3d 142, 430 N.E.2d 965; see also *Ritt v. Billy Blanks Ents.,* 8th Dist. No. 80983, 2003-Ohio-3645, 2003 WL 21545138, at ¶ 23; *Hilton v. Mill Road Constr., Ltd,* 1st Dist. No. C–030200, 2003-Ohio-7107, 2003 WL 23018579, at ¶ 6. The failure to move for a stay pending arbitration, coupled with the filing of responsive pleadings, constitutes a waiver of one's right to arbitrate a dispute.[2] *Mills,* supra.

■ {¶ 20} Here, appellant did not move the trial court for a stay of the proceedings; rather, when his motion to dismiss for failure of jurisdiction was overruled, he merely filed his answer and proceeded to defend the case. We therefore hold, pursuant to the foregoing authority, that appellant (1) was clearly aware of his alleged right to arbitrate and (2) acted inconsistently with this alleged right by filing his answer and defending the lawsuit without first moving

---

1. While appellant did challenge the trial court's jurisdiction when it moved for directed verdict, we reiterate that his initial challenge on this issue occurred by way of a motion to dismiss less than a month after the complaint was filed.

2. It is worth noting that an order granting or denying a stay of a trial of any action pending arbitration is a final, appealable order pursuant to R.C. 2711.02(C).

for a stay. As a result, appellant waived any right to arbitrate the matter, and his jurisdictional argument relating to DR 2–107 is therefore moot.[3]

{¶ 21} Appellant's first assignment of error lacks merit.

{¶ 22} Appellant's second assignment of error provides:

{¶ 23} "The trial court erred to the prejudice of defendant-appellant in overruling his motions for a directed verdict and for judgment notwithstanding the verdict."

{¶ 24} "[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Broz v. Winland* (1994), 68 Ohio St.3d 521, 526[, 629 N.E.2d 395]; *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405, 408[, 648 N.E.2d 856]. If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury. *O'Day v. Webb* (1972), 29 Ohio St.2d 215[, 58 O.O.2d 424, 280 N.E.2d 896], paragraph four of the syllabus; * * *." *Darroch v. Smyth, Cramer Co.* (Apr. 3, 1998), 11th Dist. No. 96–L–212[, 1998 WL 258422], at *3. "A motion for a directed verdict presents a question of law that an appellate court reviews de novo." *Celmer v. Rodgers,* 11th Dist. No. 2004–T–0074, 2005-Ohio-7054, 2005 WL 3610478, at ¶ 27.

{¶ 25} A motion for JNOV is reviewed under the same standard as that of a motion for a directed verdict. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271; see also *Blatnik v. Avery Dennison Corp.* (2002), 148 Ohio App.3d 494, 504, 774 N.E.2d 282.

{¶ 26} The evidence indicates that appellee served as second chair and local counsel on the Lukac matter from the date of the engagement agreement, June 1999, through the time the jury arrived at a verdict for $1.75 million in damages, i.e., June 2003. At trial, appellee testified that during this time frame, he did everything appellant asked of him, including interviewing jurors from a past

---

3. We additionally point out that DR 2–107 "serves to prevent the erosion of public confidence in the legal profession, particularly by 'avoiding what many perceive as the tawdry spectacle of lawyers fighting over the carcass of a fee' and 'helps to preserve the confidentiality of attorney-client communication and to preserve privileges.'" *Shimko v. Lobe,* 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, at ¶ 9, quoting magistrate's decision in Cuyahoga County Court of Common Pleas. By failing to do everything procedurally necessary to preserve his alleged rights, appellant effectively agreed to try the matter in a public civil forum, an action expressly contrary to the spirit and policy of the rule upon which appellant relies.

asbestos case and other pretrial and trial preparations. After receiving the verdict, appellee, appellant, and Lukac retreated to a local pub for a celebratory cocktail. Appellee testified as to what occurred next:

{¶ 27} "[W]e sat down at a round table, I think [appellant] had a tall beer, I believe I had a Bacardi and [C]oke, and Steve Lukac had—it might have been Scotch on the rocks or something, and we weren't there five minutes, I think max.

{¶ 28} "Q. All right, what happened?

{¶ 29} "A. Dean says—we were talking about the case, of course, and Dean says to me, I am going to talk to you about your unethical conduct during the Lukac case. And I said, what? And he said, I am going to talk to you later about your unethical conduct in the Lukac case. And I said, you got to be shitting me, take that back. And he said, no. And I said it one more time. And I said, you know what * * * I am out of here. So I left."

{¶ 30} Appellee asserted that he had no idea what appellant was referring to. However, several days later, on June 6, 2003, in light of the allegation, appellee wrote appellant terminating their co-counsel relationship. On August 18, 2003, after exchanging many additional letters, most of which relate to whether appellee was entitled to 25% of the fees the parties agreed to in the June 22, 1999 engagement letter, appellant formally fired appellee.

{¶ 31} Appellant argues that appellee is not entitled to the fee distribution set forth in the agreement because the employment relationship ended before the case was settled and finalized. Thus, according to appellant, appellee was not entitled to the 75%/25% fee division set forth in the engagement letter. Moreover, appellant asserts that because appellee failed to provide the jury with a basis for making a determination of the value of his services rendered before the relationship ended, he did not prove an essential element of a cause of action for breach of contract. We disagree.

{¶ 32} The evidence adduced at trial established that appellee performed all tasks expected of him in the underlying case. He did what was asked of him at all times. He further sought to assist in other ways and to provide advice, strategic or procedural, but appellant frequently rebuffed his solicitations and suggestions. The record indicated that prior to May 30, 2003, the day the verdict in the Lukac case came in, appellant had nothing but laudatory things to say about appellee and his assistance. Appellant described appellee as the most valuable local counsel with whom he had ever worked and underscored what a pleasure it was working with appellee. There is no evidence in the record indicating that appellant had anything negative to say about appellee's performance or conduct prior to the episode at the pub. In other words, it was only *after*

the jury had rendered its verdict and awarded considerable damages to Lukac that appellant indicated that he had a problem with appellee's professional conduct.

{¶ 33} We believe that appellee put forth adequate evidence to prove his cause of action for breach of contract by a preponderance of the evidence. A contract requires "an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." *Lake Land Emp. Group of Akron, L.L.C. v. Columber,* 101 Ohio St.3d 242, 246, 2004-Ohio-786, 804 N.E.2d 27. There is no dispute as to the parties' capacity to contract. The engagement letter, dated June 22, 1999, represented appellant's offer relating to the nature of the parties' proposed relationship, including responsibilities and compensation. Appellee's June 24, 1999 response letter represented an acceptance of the terms in the agreement. Furthermore, the terms set forth in the agreement provide evidence of consideration. Finally, the parties' pursuit of the Lukac lawsuit under the terms of the engagement letter demonstrates a mutual assent to those terms. The evidence presented at trial demonstrated that appellee assiduously observed the terms of the agreement from the time it was entered into, through settlement with three of the four defendants (defendants Garlock, Gage, and M.V.G.), and finally through a jury trial with the fourth defendant (defendant John Crane). We believe that these facts are sufficient to prove that appellee performed fully in his capacity as local counsel and second-chair and therefore was entitled to 25% of the fees generated from the John Crane trial.

{¶ 34} That said, appellant takes issue with appellee's failure to remain as co-counsel through the filing of posttrial motions and final settlement of the case. While it is true that motions for JNOV and new trial *could have* been granted, they were not. Moreover, the great majority of such motions submitted in any civil matter are overruled. In point of fact, appellee testified that in 99 jury trials, he has never had such motions granted in his favor or against him. Appellee pointed out that if a civil verdict is going to be reversed, such an occurrence will happen almost exclusively on appeal. With this in mind, appellant chose to enter into a postverdict settlement with the defendant in order to, in all likelihood, avoid appeal. This was a strategic maneuver over which appellant had control and thus had no impact on whether appellee had honored his obligations under the contract.

{¶ 35} Even were we to accept appellant's assertion that appellant did not fully perform under the contract, we believe, at the very least, that appellee performed substantially under the contract. In Ohio, substantial performance of obligations under an employment contract entitles a party to payment under the contract. *Zolg v. Yeager* (1997), 122 Ohio App.3d 269, 275, 701 N.E.2d 723; see

also *Cleveland Neighborhood Health Servs., Inc. v. St. Clair Builders, Inc.* (1989), 64 Ohio App.3d 639, 644, 582 N.E.2d 640; *Kichler's, Inc. v. Persinger* (1970), 24 Ohio App.2d 124, 126, 53 O.O.2d 337, 265 N.E.2d 319; *Ashley v. Henahan* (1897), 56 Ohio St. 559, 568–569, 47 N.E. 573, 575–576. Thus, we hold that the trial court did not err in failing to grant appellant's motions for directed verdict and JNOV. Because appellant was entitled to payment under the terms of the original agreement, he was not required to introduce any testimony about the reasonable value of his services.

{¶ 36} Appellant's second assignment of error is overruled.

{¶ 37} Under his third assignment of error, appellant asserts:

{¶ 38} "The trial court erred to the prejudice of defendant-appellant in overruling his motion for a new trial."

{¶ 39} An appellate court reviews a trial court's decision to grant or deny a new trial for an abuse of discretion. *Means v. Smurfit–Stone Container Corp.*, 11th Dist. No. 2004–A–0048, 2005-Ohio-6159, 2005 WL 3097559, at ¶ 11.

{¶ 40} Appellant asserts that he was entitled to a new trial for various reasons: (1) the damages for the breach of contract were too large, (2) the court gave improper jury instructions, (3) appellant suffered prejudice due to erroneous evidentiary rulings, (4) appellant was prejudiced by the trial court's refusal to permit him to offer impeachment evidence of appellee's expert witness, (5) the verdict was a product of passion and prejudice, and (6) the verdict was against the weight of the evidence. We shall address these issues in turn. We shall address the issues out of order.

{¶ 41} First, appellant asserts that the jury's verdict was a result of passion and prejudice. Appellant cites various statements made or solicited by appellee's counsel during opening statement and appellee's direct examination pertaining to appellee's personal background. In particular, appellant points to appellee's statements at trial that neither of his parents graduated from high school, he volunteered to serve in the Navy during the Vietnam war, he volunteered for the Peace Corps, and he worked two jobs to pay his way through college. Appellant further points out appellee's testimony that he returned to Trumbull County after completing his education because that is where his "roots were sown" and he "missed the people." Finally, appellant complains that the thrust of appellee's testimony was to show that appellant was a wealthy, domineering attorney who unjustly deprived appellee of fees to which he was rightfully entitled due to his hard work and diligence. As a whole, appellant contends that the cumulative effect of appellee's "negative campaign" inflamed the jury and resulted in an "excessive verdict." We disagree.

{¶ 42} We point out that appellant failed to object to the remarks he now challenges. The failure to object at the trial court acts as a waiver of the issue. *Stores Realty Co. v. Cleveland Bd. of Bldg. Stds. & Bldg. Appeals* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629. Because appellant did not object, he has waived this issue on appeal. However, we shall nevertheless review the impact of the testimony for plain error. A plain error is an obvious and prejudicial error that affects the character and confidence of the underlying proceedings. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099. The doctrine of plain error is highly disfavored in civil cases and should be applied in extremely rare circumstances. Id.

{¶ 43} First, we do not believe that appellee's background information garnered him any sympathy from the jury in the context of the case. Appellee's biographical information, while not directly relevant to the breach-of-contract claim, served as a foundation for discussing appellee's occupation as an attorney and how the relationship between appellee and appellant arose. In our view, the testimony was prefatory, and any negative impact was negligible in light of the overwhelming evidence of the breach.

{¶ 44} Furthermore, a review of the transcript of proceedings does not support appellant's assertion that appellee attempted to inflame the passions of the jury by representing appellant as an individual with whom he had difficulty working. Any testimony on this issue related to the nature of the parties' occupational relationship, the severance of which was a primary issue at trial. In any event, appellant had an opportunity to cross-examine appellee and/or to present counter-testimony regarding the manner in which he believed appellee portrayed him. We therefore hold that the sum of the testimony at issue did not affect the character and confidence of the underlying proceedings, particularly in light of the overwhelming evidence of appellant's breach. We find no plain error in the jury's consideration of the evidence at issue. Appellant's argument lacks merit.

{¶ 45} Next, appellant contends that the jury verdict exceeded the amount appellant was entitled to under the original contract. Specifically, appellant received $500,000 in fees from the settlement of the Lukac case. Therefore, in appellant's view, appellee was entitled to $125,000, one-quarter of the total fee, not the $155,000 the jury rewarded.

{¶ 46} In his opening statement, appellant invited the jury to give appellee "what he deserves." Moreover, during closing, appellant entreated the jury to award appellee the reasonable value of his services. At no point did appellant seek a jury instruction to limit the amount of damages to 25% of the attorney fees ($125,000) recovered in the Lukac case in the event of a verdict in appellee's favor. While appellant assuredly believed that any jury award would be lower

than $125,000, his statements and solicitations provided a foundation for the jury to go beyond that amount. The jury followed appellant's invitation and awarded appellee an amount based upon what it believed was reasonable in light of the facts presented at trial. Because the jury did what it was asked to do and, pursuant to our analysis above, there is no evidence that the verdict was prompted by passion or prejudice, we see no error in the amount awarded.

{¶ 47} Next, appellant contends that the trial court erred by failing to give jury instructions based upon DR 2–106 and 2–107. Because we have already addressed the applicability of the disciplinary rules to this matter under appellant's first assignment of error, this argument is overruled.

{¶ 48} Appellant next argues that he was denied a fair trial due to erroneous evidentiary rulings. Specifically, appellant asserts that the trial court erred in allowing appellee to introduce evidence relating to his allegations that appellant "treated [appellee] in an insulting and demeaning manner" and was "extremely difficult to work with." Appellant contends that any evidence relating to these claims was irrelevant; moreover, appellant complains that appellee failed to disclose the basis for the allegations. For these reasons, appellant maintains that the evidence was inadmissible.

{¶ 49} First, a review of the record and proceedings demonstrates that appellee disclosed the facts upon which he concluded that appellant was "insulting and demeaning." In his memorandum in opposition to appellant's motion in limine, appellee points out that appellant accused him of being unethical in front of their client. Clearly, appellant was not ambushed at trial with this revelation. Moreover, we hold that the introduction of this evidence is relevant because it tends to show a basis for appellee's discontinuing employment with appellant. This is a foundation for the collapse of the relationship, which led to the breach of contract upon which the underlying case was grounded.

{¶ 50} Similarly, the assertion that appellant was "very difficult to work with" was based upon appellee's perception that appellant was unreasonably demanding and periodically abusive. Again, those allegations relate to the reasons why the parties' professional relationship collapsed and appellee brought the underlying lawsuit. Appellee also disclosed this in his memorandum in opposition to appellant's motion in limine. Although appellant's allegations were not buttressed by specific instances of unreasonable behavior, save the allegation of unethical conduct, appellant had ample opportunity to prepare a defense and/or to counter the general allegation with evidence tending to show that he was collegial to appellee and that his professional demands were reasonable. Again, appellant had fair notice of the foundation of appellee's allegations. He therefore had time to prepare and present evidence in an attempt to counter or refute the allegations. We accordingly hold that the testimony supporting the allegations was

relevant; moreover, the testimony supporting the conclusions was not sprung upon appellant at trial, but was disclosed and, in fact, foreseeable in light of the complaint.

{¶ 51} Next, appellant claims that he was prejudiced when the trial court denied him the opportunity to offer impeachment evidence relating to appellee's one-time reference to his expert as a "wolf in sheep's clothing." We disagree.

{¶ 52} During appellee's case, appellant had an opportunity to fully cross-examine appellee and his other witnesses. After appellee rested his case, appellant desired to recall appellee for the purpose of determining what he meant when he made this statement. Appellee objected because appellant had already had the chance to cross-examine appellee and his expert. The objection was sustained.

{¶ 53} We believe that the court's action was within its sound discretion. Allowing appellee to recall appellant for this limited purpose would have extended the proceedings for reasons that would have had little, if any, bearing upon the ultimate matter at issue. Even had appellant been allowed to re-cross appellee to explain why he, at one time, described his expert as a "wolf in sheep's clothing," it is unclear how this explanation would bear upon appellee's overall case. Appellee called the expert to testify as to appellee's truthfulness and veracity in the community; he further testified that there was nothing unethical in appellee's carrying a notebook into trial containing some materials from a separate case. When viewing the trial as a whole, appellant had already established substantial, if not full, performance under the agreement. Hence, irrespective of the expert's testimony and/or his ultimate credibility, there was adequate evidence introduced to support a verdict in appellee's favor.

{¶ 54} Finally, appellant asserts that the jury's verdict was against the weight of the evidence. Pursuant to our analysis under appellant's second assignment of error, we hold that this argument is not well taken.

{¶ 55} As a result of the foregoing analysis, we hold that the trial court did not abuse its discretion in denying appellant's motion for a new trial. Appellant's third assignment of error is overruled.

{¶ 56} For the reasons herein, appellant's three assignments of error are overruled, and the judgment entry of the Trumbull County Court of Common Pleas endorsing the jury's verdict is hereby affirmed.

Judgment affirmed.

O'TOOLE and CANNON, JJ., concur.