Jones, J.
 

 Section 8510, General Code, contains the following provision:
 

 “A deed, mortgage, or lease of any estate or interest in real property, must be signed by the grantor, mortgagor, or lessor, and such signing be acknowledged by the grantor, mortgagor, or lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. ’ ’
 

 The section then provides that the signing must be acknowledged by the lessor before certain officials named therein, included among whom is a justice of the peace.
 

 It is claimed by the defendants in error that the lease of October 26, 1922, to the gas company was invalid, because it was improperly executed; that it was not signed and acknowledged by the lessors in the presence of two -witnesses, as required by statute; and, especially, that the acknowledgment of the husband, Wells, taken by the justice of the peace over the telephone, was not in compliance with the statute, since it was not taken in the physical presence of said lessor.
 

 McMullen, one of the witnesses to the lease and the justice of the peace who took the purported acknowledgment, was not a witness at the trial. The Wells, both husband and wife, as well as Weiss, one of the witnesses, did testify. The manner in which the signing and acknowledgment were done is substantially without dispute. Weiss took the paper to the home of the Wells. Both of the lessors
 
 *211
 
 admitted having signed the lease in the presence of Weiss, who signed and attested the paper as one of the two witnesses. McMullen, the justice of the peace, lived about three miles from the Wells home. After the paper had been signed by the husband and wife, and by the witness Weiss, McMullen appeared at the Wells home and saw the wife, and it is very evident from the testimony that her acknowledgment was taken at that time, since she admits that McMullen came to her house to take the acknowledgment, that she supposed he was coming there for that purpose, and that the lease signed by her was mentioned in the conversation relating thereto. However, she did not see the paper writing at the time McMullen was there. As to the attestation and acknowledgment of the husband, the testimony discloses that he admitted that he signed the lease as stated in the presence of Weiss. The husband testified that, within a week thereafter, McMullen, the justice of the peace, called him over the telephone, and that he thought he knew his voice; that McMullen asked him over the phone, “Have you signed the paper?” Wells testified that he answered that he had, and that he knew that McMullen was referring to the lease at the time.
 

 For the purpose of this decision, therefore, it is substantially without dispute that both Wells and his wife signed the lease in the presence of one witness; and both admit their signatures. The appearance of the justice of the peace at the home of Wells, and his interrogating of Mrs. Wells with respect to the lease which she had signed, is, we think, sufficient acknowledgment of her signature before that officer. However, the signing and
 
 *212
 
 acknowledging of the lease, while admitted by the husband, were not actually done in the presence of McMullen, the justice of the peace; but there is no doubt that the acknowledgment was taken by telephone.
 

 It has been held in this state that “a regular statutory certificate of the acknowledgment of a deed of conveyance, made by husband and wife, is, in the absence of fraud, conclusive evidence of the facts therein stated.”
 
 Baldwin
 
 v.
 
 Snowden,
 
 11 Ohio St., 203, 78 Am. Dec., 303.
 

 If it appeared that there was any fraud or imposition exercised upon Wells in the telephonic acknowledgment made by Wells, and taken by the justice of the peace, or that Wells had in some way been misled or deceived to his injury, he might, in that event, rely upon a full compliance of the statute requiring acknowledgment to be taken in his presence. However, both Wells and his wife admit the signature; they admit their intention to execute this lease to the gas company; no fraud or deception was practiced upon either of them. It is therefore difficult to see why, under the facts thus developed and the circumstances which will be noted hereafter, either of them could evoke the aid of a court of equity in order to escape the consummation of the purposes they actually intended. Wells and his successor in title sought the aid of a court of equity. Obviously, for reasons assigned later in this opinion, if Wells cannot obtain relief, neither can Keith, who obtained the second lease from Wells and his wife. Although Wells and his wife had executed the lease to the gas company in October, 1922, they, did nothing to advise their
 
 *213
 
 grantee of the claimed invalidity by reason of the alleged defective acknowledgment. On the contrary, they waited for a period of nearly four years, until a short time before the suit was brought. Wells admitted that shortly before executing the lease to Keith he saw McMullen and told him that he could receive more rental compensation for his land if he had not acknowledged the lease over the telephone. Furthermore, it appears from this record, without dispute, that from October 25, 1922, to October 26, 1926, Wells and his wife had received the sum of $23.50 in quarterly payments for delayed operations under the terms of their lease to the gas company. This sum amounted to a total of $376, which Wells received during the four-year period. He also admits that he has neither tendered nor offered to tender any of this money back to the gas company.
 

 As stated heretofore, the cross-petition of Wells and his codefendants was for the quieting of title, which this court has held to be a chancery proceeding.
 
 W. G. McBride, Inc.,
 
 v.
 
 Murphy,
 
 111 Ohio St., 443, 145 N. E., 855;
 
 Lust
 
 v.
 
 Farmers’ Bank & Savings Co.,
 
 114 Ohio St., 312, 151 N. E., 189. It therefore very clearly appears that even under his own admissions Wells, the holder of the fee, did not come into court with clean hands, and that the exaction of the pound of flesh which he now demands would be contrary to the principles of morality and fair dealing. His grantee, Keith, occupies no better position. For not only did he have constructive notice of the gas company’s recorded lease, regular upon its face, but he admitted that he had learned from Wells of the latter’s
 
 *214
 
 claim regarding the invalidity of the gas company’s lease. Keith himself testified that he knew that the prior lease was recorded; that he learned from M. K. Wells “just what he [Wells] claimed was the matter with it;” and that he also had learned from Wells that the latter “had received the royalties up until October last [1926].”
 

 It is argued by counsel for the defendants in error that the petition and proof of plaintiff below were insufficient to sustain an action to quiet title, because of failure to plead and prove possession. A complete answer to that contention is that Wells and Keith in their cross-petition asked for the same relief, and the cause was actually heard upon their cross-petition. The defendants thereby sought to sustain their own affirmative action to quiet title, which plaintiff resisted successfully in the trial court, but unsuccessfully in the appellate court.
 

 The judgment of the Court of Appeals is reversed, and final judgment rendered for plaintiff in error.
 

 Judgment reversed.
 

 Marshall, C. J., Allen, Kinkade, Robinson and Matthias, JJ., concur.
 

 Day, J., concurs in propositions 2 and 3 of the syllabus and in the judgment.