**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0290n.06

**No. 13-3677**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KENNETH COLE; MARTHA COLE, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | **FILED**<br>Apr 18, 2014<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| EV PROPERTIES, L.P.; NORTH COAST | ) | ON APPEAL FROM THE |
| ENERGY, INC.; ENERVEST OPERATING, LLC; | ) | UNITED STATES DISTRICT |
| ENERVEST ENERGY INSTITUTIONAL FUND | ) | COURT FOR THE NORTHERN |
| XI-WI, LP; ENERVEST ENERGY | ) | DISTRICT OF OHIO |
| INSTITUTIONAL FUND XI-A, LP; CGAS | ) | |
| PROPERTIES, LP, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

This appeal turns on which of two lines of Ohio Supreme Court authority controls an improperly notarized oil and gas lease. The district court applied the rule of *Citizens Nat'l Bank v. Denison*, 133 N.E.2d 329, 332 (Ohio 1956), and *Logan Gas Co. v. Keith*, 158 N.E. 184, 185 (Ohio 1927), which holds that instruments reflecting a conveyance of a real estate interest remain enforceable between the parties, despite a defective acknowledgment. On this basis, the district court granted defendants' motions to dismiss and for judgment on the pleadings. The Coles appeal, relying upon *Delfino v. Paul Davies Chevrolet, Inc.*, 209 N.E.2d 194, 196 (Ohio 1965),

which holds that defectively acknowledged leases are invalid and unenforceable between the parties. Because we conclude that the district court properly applied *Citizens National* and *Logan Gas*, we affirm.

I.

Kenneth and Martha Cole own a farm in eastern Ohio. According to the Coles' complaint, in July 2006, they executed several documents purporting to grant an oil and gas lease to North Coast Energy, Inc. ("North Coast") for the subsurface estate of their farm. Although a notary public subsequently notarized the documents, the Coles contend that they did not personally appear before the notary. The Coles do not allege that the instruments were the product of fraud or forgery. On the contrary, they concede that they executed the instruments "with the expectation that North Coast Energy would drill for oil and gas on their property."

In June 2012, dissatisfied with North Coast's conduct respecting the lease, the Coles filed a putative class action suit in state court. The Coles claimed that the lease was invalid and unenforceable because of the defective acknowledgment of their signatures. Asserting that numerous other potential plaintiffs were in similar circumstances, the Coles' declaratory judgment action asked that "the lease be declared invalid and unenforceable" and sought a ruling that "the leases do not encumber their property in any respect." The complaint also alleged that North Coast had assigned its rights under the lease to several entities associated with EnerVest Operating, LLC, and the Coles joined these entities (collectively, "EnerVest") as defendants to their lawsuit.

The case was removed to the district court on the basis of diversity jurisdiction under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d). Defendant North Coast subsequently moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim, while defendant EnerVest sought judgment on the pleadings pursuant to Rule 12(c). Ultimately, the district court granted both motions for the same reason. Rejecting the Coles' argument that *Delfino* applied, the district court concluded that the rule of *Citizens National*—as expressed in *Logan Gas*—applied instead. Because *Logan Gas* and *Citizens National* hold that a defectively acknowledged instrument remains enforceable between the parties to the instrument despite the defective execution, the district court ruled that the Coles' complaint failed to state a claim. The Coles now appeal.

II.

The same de novo standard of review is applicable to the district court's orders granting a motion for judgment on the pleadings and granting a Rule 12(b)(6) motion to dismiss. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 713 (6th Cir. 2013). For a complaint to survive such motions, it must—when the record is construed in the light most favorable to the non-moving party and when all well-pled factual allegations are accepted as true—contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted).

The Coles' argument in support of reversing the district court is that *Delfino*, rather than *Citizens National*, applies to the disputed lease, meaning that the lease is unenforceable even between the parties due to the defective acknowledgement. We do not agree. Even assuming that the interplay between *Delfino* and *Citizens National* is somewhat unclear, "[i]n the absence of clear legal directives from the Ohio Supreme Court, a federal court applying Ohio law must predict what the Ohio Supreme Court would hold." *Carolina Cas. Ins. Co. v. Panther II Transp., Inc.*, 402 F. App'x 62, 66 (6th Cir. 2010); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Given the pertinent Ohio authority, we are confident that, on the circumstances of this case, the Ohio Supreme Court would follow the *Citizens National* line of authority and hold that the oil and gas lease at issue gives rise to an enforceable interest between the parties, despite the instruments' defective acknowledgment.

A.

The parties do not seriously disagree either that the Coles' instruments are governed by Ohio Rev. Code § 5301.01(A), *see Langmede v. Weaver*, 60 N.E. 992, 995 (Ohio 1901), or that the Coles sufficiently alleged that their instruments were defectively acknowledged under the statute. Section 5301.01(A) requires that a lessor "shall . . . acknowledge[ ]" his signature on the lease instruments "before" a qualified official, such as a notary public. Ohio Rev. Code § 5301.01(A). *See also In re Huffman*, 408 F.3d 290, 293–94 (6th Cir. 2005) (describing contemporary legislative amendments and successful constitutional challenges to versions of § 5301.01 and related statutes). The Coles have alleged that their instruments were defectively acknowledged and thereby failed to comply with § 5301.01.

Thus, the sole question in this case is whether the instruments' failure to comply with § 5301.01(A) renders the lease unenforceable as between the Coles and defendants.[1] If not, the Coles have failed to state a claim.

---

[1]Defendants also suggest that Ohio Rev. Code § 5301.09, which provides that "[n]o [oil and gas lease] is valid until it is filed for record, *except as between the parties thereto*," *id.* (emphasis added), may on its own decide the issue of the lease's enforceability between the parties. But § 5301.09 states only that failing to record an oil and gas lease does not on its own render the lease invalid as between the parties. *Id.* It says nothing about whether such a lease may be invalid as between the parties for other reasons, including improper execution. The statute is therefore silent as to whether both properly executed and defectively executed oil and gas leases are valid "as between the parties thereto," despite being unrecorded or whether only the former—but not the latter—are. *See Langmede*, 60 N.E. at 995 (noting this feature of § 5301.09's predecessor statute).

B.

Although the parties state their positions in somewhat different terms, they agree that Ohio law imposes a stark binary on the effect of defectively acknowledged instruments purporting to effect a real estate transaction. According to the parties, transfers of fee interests (often reflected in deeds and mortgages) are governed by the rule of *Citizens National*, which observed that "[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud." 133 N.E.2d at 332 (citing *Logan Gas*, 158 N.E. at 184).[2] Leases, by contrast, are governed by *Delfino*, which held that "a defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby." 209 N.E.2d at 196. Under *Delfino*, a defectively acknowledged lease may be enforced between the parties under the equitable doctrine of part performance, which requires a showing of detrimental reliance on the part of the party seeking enforcement. *Id.* at 286–89. Given their depiction of a binary deed/lease distinction enshrined in Ohio defective-acknowledgment jurisprudence, the parties train their arguments on the issue of whether the Coles' defectively acknowledged oil and gas lease instruments reflect an intended conveyance of a fee interest (bringing it within the ambit of *Citizens National*) or a lease (bringing *Delfino* to bear).

None of the parties has explained a convincing rationale for hinging the effect of defective acknowledgment upon the nature of the property interest reflected in the defectively

---

[2]Although the pertinent language in *Citizens National* is technically dicta, the Ohio courts have held that it nonetheless "set forth the correct law on the issue" of enforceability of defective real estate instruments. *Lasalle Bank N.A. v. Zapata*, 921 N.E.2d 1072, 1075 (Ohio Ct. App. 2009). *See also Basil v. Vincello*, 553 N.E.2d 602, 606 (Ohio 1990) (relying on *Citizens National* to hold that a defective instrument gave rise to an enforceable interest between the parties to the instrument).

executed instruments.[3]   Nor has any party compellingly argued that the Coles' defectively acknowledged instruments reflect a fee conveyance rather than a leasehold or vice versa.[4]

But the exercise is in any event beside the point.  A careful reading of *Delfino* reveals that it did not supplant Ohio's long-standing rule that "[a] defectively executed instrument, *either a lease or a deed*, when made by the owner, may be enforced against him as a contract to make a lease or deed for the reason that it is his contract." *Lithograph Bldg. Co. v. Watt*, 117 N.E. 25, 28 (Ohio 1917) (emphasis added).  In *Delfino*, the court observed that its holding was narrowly confined to the specific nature of the case before it, in which the plaintiff had asked only for a

---

[3]The opacity underlying the deed/lease distinction asserted by the parties makes it difficult to square with the purpose of § 5301.01, which is to "afford[] proof of the due execution" of the instrument by the transferor "sufficient to authorize the register of deeds to record it" and thereby place creditors and potential purchasers on notice of competing interests in the property.  *Basil*, 553 N.E.2d at 606.  Like mortgages and deeds, most leases must be properly recorded under the Ohio statutory regime.  *See* Ohio Rev. Code §§ 317.08(A)(5), 5301.06, 5301.08, 5301.09, 5301.25–.251.  If the purpose of acknowledgment is to ensure proper recordation and thereby "protect[] . . . creditors and purchasers," *Citizens National*, 133 N.E.2d at 332 (citation omitted), rather than "to provide a way of escape for a party who later wishes to renege on his agreement," *Seabrooke v. Garcia*, 454 N.E.2d 961, 964 (Ohio Ct. App. 1982), then it is not perfectly intuitive that a lease that fails to comply with § 5301.01 should be rendered utterly void, while a deed that fails to comply with the same statute in the same way remains enforceable between the parties.  *But see Delfino*, 209 N.E.2d at 196 (holding that § 5301.01 "is mandatory in nature and sets forth clearly the legal requisites necessary to create a valid lease"); *Burger v. Buck*, 2008-Ohio-6061, 2008 WL 4964670, at *4 (Ohio Ct. App. Nov. 21, 2008) (unpublished) (opining that *Citizens National* applies to deeds while *Delfino* applies to leases).

[4]*Compare Harris v. Ohio Oil Co.*, 48 N.E. 502, 506 (Ohio 1897), and *Kramer v. PAC Drilling Oil & Gas, L.L.C.*, 968 N.E.2d 64, 68 (Ohio Ct. App. 2011) (where instrument grants the oil and gas to the grantee along with drilling rights, it conveys a fee simple determinable with a possibility of reverter upon certain conditions, including exhaustion of paying quantities of oil and the grantees' voluntary surrender) *with Back v. Ohio Fuel Gas Co.*, 113 N.E.2d 865, 867 (Ohio 1953) (noting that an oil and gas lease "bears the earmarks of a license" when it grants only "operating privileges on the land surface" to the lessee for the purpose of securing possession of oil and gas from the subsurface estate), *and Jones v. Wood*, 3 Ohio Dec. 299 (Ohio Cir. Ct. 1895), *aff'd*, 47 N.E. 1119 (Ohio 1896) (holding that an instrument was a lease, not a fee conveyance, where it granted the right to drill for oil but did not expressly transfer any right to the oil *in situ*, was terminated upon unavailability of oil in paying quantities, and contained a surrender clause).

*legal*—rather than an *equitable*—remedy: "Since plaintiff did not request specific performance it is not necessary to decide in the action whether the defectively executed lease could be treated as a contract to make a lease which could be specifically enforced." 209 N.E.2d at 199. As a result, *Delfino* does not, as the Coles contend, extinguish the possibility that defendants possess an enforceable interest in the oil and gas lease, notwithstanding the defective acknowledgment of the lease instruments. *See Basil*, 553 N.E.2d at 606.

And on the allegations of the complaint, it is clear that defendants do possess such an interest here. "There is no magic about the word 'lease'" that exempts leases from typical rules governing the enforcement of voluntary agreements between competent parties. *Pero v. Miller*, 166 N.E. 242, 242 (Ohio Ct. App. 1928). If supported by consideration, a lease is "a valid and enforcible [sic] contract between the parties," even if "defectively executed and not recorded." *Id.*; *see also Seabrooke*, 454 N.E.2d at 964 ("[T]he acknowledgment of an instrument is not the same as the instrument itself."). Defective acknowledgment, therefore, is not fatal to the enforceability of a lease as between parties who intended that it bind them, at least when specific performance is requested. *See Lithograph Bldg. Co.*, 117 N.E. at 28 (defectively executed lease may be enforced against the signatory "as a contract to make a lease or deed for the reason that it is his contract"); *Shoney's, Inc. v. Winthan Properties, Inc.*, 2001-Ohio-3965, 2001 WL 1586534, at *5 (Ohio Ct. App. Dec. 13, 2001) (unpublished) (the failure to record an assignment of a lease "does not affect the relationship between the parties to the document"); *Sigg v. Subway Sandwich Shops, Inc.*, 1997 WL 410725, at *2 (Ohio Ct. App. July 23, 1997) (unpublished) ("Since the parties intended to execute the lease as it was written, a mere defect in the number of witnesses cannot be used by a successor to the party to escape the terms of the lease."); *Hennessy v. Moreland*, 104 N.E.2d 195, 196 (Ohio Ct. App. 1951) ("It is without question the rule in Ohio

that in equity a defectively executed lease, although void at law, may be held to be a contract to make a lease, and specific performance of the contract ordered by the court."). *See also J.J. Newberry Co. v. Marshall*, 125 F.2d 973, 976 (6th Cir. 1942) (under Ohio law, a defectively acknowledged lease "is regarded in equity as a contract to make a lease").

Our confidence in this result is bolstered by at least two additional considerations. First, our role as a federal court resolving a contested issue of state law is to "ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001). For the purposes of our narrow inquiry, the pertinent case law is uniform: The Ohio courts have never, to our knowledge, applied *Delfino* to render a defectively acknowledged oil and gas lease unenforceable between the parties to the instruments. In fact, they have repeatedly held the opposite, concluding that defectively acknowledged oil and gas leases remain enforceable between the parties, despite defective execution. *See, e.g.*, *Logan Gas*, 158 N.E. at 186 (defectively acknowledged oil and gas lease was enforceable between the parties absent fraud); *Langmede*, 60 N.E. at 996 ("As between the original parties to it, there is no difficulty in making the instrument effect the intended object; for equity would regard that as done which the parties agree to do." (citation omitted)) (defectively executed oil and gas lease); *Swallie v. Rousenberg*, 942 N.E.2d 1109, 1114 (Ohio Ct. App. 2010) (defectively acknowledged assignment of oil and gas lease remained enforceable between the parties absent fraud). *See also Allegheny Oil Co. v. Snyder*, 106 F. 764, 769 (6th Cir. 1900) (holding that, under Ohio law, a defectively acknowledged oil and gas lease "may be treated as a good agreement in equity to convey the premises, and when free from fraud may be enforced as such"). In this case, to predict what the Ohio courts would do in the future, we need only look to the past. *See Combs v.*

*Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). Given the one-sided nature of state precedent on the question, we are satisfied that the Ohio Supreme Court would hold that an enforceable property interest exists between the Coles and defendants, notwithstanding the defectively acknowledged instruments.[5]

Second, we cannot ignore that the Coles' argument amounts to an attempt to leverage § 5301.01's acknowledgment requirement for ends that are perpendicular to its purposes. "The primary purpose of compliance with the acknowledgement statute [§ 5301.01] is to provide proof that an interest in property has been conveyed so that it may be recorded." *Cincinnati Entm't Assoc., Ltd. v. Hamilton Cty. Bd. of Commrs.*, 753 N.E.2d 884, 892 (Ohio Ct. App. 2001); *see Basil*, 553 N.E.2d at 606. Thus, the "object" of acknowledgment "is the protection of creditors and purchasers," *Citizens National*, 133 N.E.2d at 332 (citation omitted), not "to provide a way of escape for a party who later wishes to renege on his agreement." *Seabrooke*, 454 N.E.2d at 964.

Where there is no dispute that the parties actually signed the defectively acknowledged instruments and intended that the transfer occur, the Ohio courts have insisted that the parties be

---

[5]To the extent that jurisprudence from other jurisdictions is relevant to predicting the Ohio Supreme Court's probable resolution of this legal question, *see Combs*, 354 F.3d at 577; *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999), we note that the majority of pertinent case law supports the position that a defectively executed lease remains enforceable between the parties. *See, e.g.*, *Pearl v. Interstate Sec. Co.*, 206 S.W.2d 975, 978 (Mo. 1947) ("[A]n unacknowledged assignment, like an unacknowledged deed, would give some rights as between the parties."); *Epletveit v. Solberg*, 169 P.2d 722, 727 (Mont. 1946) (unacknowledged lease is binding between parties); *English v. Plumlee*, 291 S.W. 922, 923 (Tex. Civ. App. 1927) ("As between the parties to the [oil and gas] lease and the assignment, the acknowledgments . . . were not essential to their validity nor proper record of the instruments necessary."); *Cypress Creek Coal Co. v. Boonville Mining Co.*, 142 N.E. 645, 651 (Ind. 1924) (defective acknowledgment of coal mineral lease "would not affect the validity of the instrument as between the parties thereto"). *But see Ben Holt Indus., Inc. v. Milne*, 675 P.2d 1256, 1259 (Wash. Ct. App. 1984) (noting that defective acknowledgment renders lease invalid even between the parties).

bound "to that which they intended." *Id.   See, e.g.*, *Logan Gas*, 158 N.E. at 186; *Lithograph Bldg. Co.*, 117 N.E. at 28; *Langmede*, 60 N.E. at 996; *Swallie*, 942 N.E.2d at 1114; *Zapata*, 921 N.E.2d at 1075–76.   We are confident that, on the facts of this case, the Ohio Supreme Court would not diverge from this approach and would not permit the Coles to exploit a technically defective acknowledgment to documents that they unquestionably executed.

### III.

Under the rule of *Citizens National* and its progeny, the Coles' defectively acknowledged instruments reflect an interest in real property that is enforceable by North Coast, which was party to the instruments. *See Basil*, 553 N.E.2d at 606.   EnerVest, as North Coast's assignee of its interests in the lease, succeeded to all of North Coast's rights under the lease.   *Zapata*, 921 N.E.2d at 1075–76.   As a result, the district court properly dismissed the Coles' declaratory action.   For these reasons, we affirm the judgment of the district court.