[Cite as *Baxter v. Res. Energy Exploration Co.*, 2015-Ohio-5525.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| MAE M. BAXTER, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| | | **CASE NOS. 2014-T-0113,** |
| - vs - | : | **2014-T-0114,** |
| | | **2014-T-0115,** |
| RESERVE ENERGY | : | **2014-T-0117,** |
| EXPLORATION CO., et al., | | **2014-T-0118,** |
| | : | **and 2014-T-0119** |
| Defendant-Appellants. | | |

Civil Appeals from the Trumbull County Court of Common Pleas, Case No. 2013 CV 02205.

Judgment:  Reversed and remanded.


*Michael D. Rossi,* Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH  44482 and *Marty Nosich*, The Law Offices of Marty D. Nosich, L.L.C., 143 West Main Street, Cortland, OH  44410 (For Plaintiffs-Appellees).

*Mark W. Bernlohr* and *Sandra K. Zerrusen,* Jackson Kelly, PLLC, 17 South Main Street, Suite 101B, Akron, OH  44308 (For Defendant-Appellant, Anschutz Exploration Corp.)

*Timothy B. McGranor, Daniel E. Shuey,* and *Sean M. Kohl*, Vorys, Sater, Seymour & Pease, LLP, 52 East Gay Street, P.O. Box 1008, Columbus, OH  43216 (For Defendants-Appellants, Reserve Energy Exploration Co., Chesapeake Appalachia, LLC, Beldon and Blake Corp., Chesapeake Exploration, LLC., CHK Utica, LLC, and Chesapeake Acquisition, LLC, a subsidiary of Chesapeake Energy Corp.)


COLLEEN MARY O'TOOLE, J.

{¶1}   This consolidated appeal involves the grant of summary judgment by the

Trumbull County Court of Common Pleas to various landowners in their declaratory

actions to have certain oil and gas leases deemed invalid. Lessee oil and gas companies appeal this judgment. Finding their arguments with merit, we reverse and remand.

{¶2} Mae Baxter, Richard and Ladda Love, and Raymond J. Shaffer ("landowners"), all filed actions, seeking declarations that the oil and gas leases they had granted were void, since they were not properly acknowledged. All of the leases involved a payment for a primary lease term of five years. The lessee had a right to pay an amount equal to the initial payment, at the end of the primary term, extending the lease for a further five years. At the end of the primary term, all of the landowners refused to cash the checks tendered them. All of the landowners admitted they freely entered the leases. Eventually, each of the landowners sought summary judgment.

{¶3} Anschutz Exploration Corp., which had obtained the leases, sought to dismiss the actions against it, since it had assigned its interests in the leases to other entities. This motion was denied. Thereafter, Anschutz moved for summary judgment against landowners, again asserting it lacked any interest in the subject leases.

{¶4} The entities to which Anschutz had assigned the leases include Reserve Energy Exploration Co.; Chesapeake Appalachia, LLC; Belden & Blake Co.; Chesapeake Exploration, L.L.C.; Chesapeake Acquisition, L.L.C.; and CHK Utica, L.L.C. ("lessees"). Having answered the complaints against them, lessees counterclaimed, seeking, essentially, declarations the leases were valid, along with ancillary relief. Lessees all filed for summary judgment on their claims.

{¶5} The trial court consolidated the cases. By a judgment entry filed November 6, 2014, the trial court granted landowners' motions for summary judgment,

and denied those of Anschutz and lessees. The basis for this decision was that advanced by landowners: the leases were invalid, since they were not acknowledged pursuant to the Statute of Conveyances, R.C. 5301.01.

{¶6} Anschutz timely appealed, assigning two errors. Lessees timely appealed, also assigning two errors. We consolidated the appeals for all purposes.

{¶7} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66, * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

{¶8} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359, * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003 Ohio 6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, * * * (1986). On appeal, we review a trial

3

court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, * * * (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

{¶9} Regarding declaratory actions, the court held in *Herrick v. Kosydar*, 44 Ohio St.2d 128, 130 (1975):

{¶10} "'[I]t is settled in Ohio that an action for a declaratory judgment may be alternative to other remedies in those cases in which the court, in the exercise of sound discretion, finds that the action is within the spirit of the Uniform Declaratory Judgments Act, that a real controversy between adverse parties exists which is justiciable in character, and that speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost.'" *Id.*, quoting *Am. Life & Acc. Ins. Co. v. Jones*, 152 Ohio St.287 (1949).

{¶11} For its first assignment of error, Anschutz states: "The trial court erred when it found the Plaintiffs-Appellees had a viable declaratory judgment action against Anschutz Exploration Corporation." Anschutz argues the trial court erred in failing to grant its motion for summary judgment, since it had assigned all of its interests in the subject lease to lessees. Landowners counter by citing to Civ.R. 19(A), which provides, in pertinent part: "A person who is subject to service of process *shall* be joined as a party in the action if * * * (3) he has an interest relating to the subject of the action as an assignor * * *." (Emphasis added.) Use of the verb "shall" in a rule or statute indicates the matter is mandatory. *Aria's Way, LLC v. Concord Twp. Bd. of Zoning Appeals*, 173 Ohio App.3d 73, 2007-Ohio-4776, ¶22 (11th Dist.) Landowners argue that as the

4

original lessee, and assignor of all the leases in question to the present lessees, Anschutz was a necessary party.

{¶12} We find the opinion of the court in *Cameron v. Hess Corp.*, 974 F.Supp.2d 1042 (S.D.Ohio 2013), relied on by Anschutz, persuasive. Defendant Mason Dixon Energy, Inc., asserted it was not a proper party to an action concerning oil and gas leases, since it had assigned all of its interests therein to other parties. The Southern District of Ohio held:

{¶13} "In assigning the * * * Leases, however, Mason Dixon extinguished all of its rights in those contracts under Ohio law. In alienating property via an assignment, the assignee 'acquires' all attendant property rights, and the rights of the assignor are 'extinguished.' 6 Am. Jur.2d, Assignments § 1 (2012) ('an assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished (* * *) and the assignee acquires a right to such performance (* * *)'); *W. Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St. 3d 497, 2009-Ohio-3506, * * * (Ohio) ('An assignment is a transfer to another of all or part of one's property in exchange for valuable consideration'). As a result, 'an assignee (* * *) stands in the shoes of the assignor (* * *), and succeeds to all the rights and remedies of the latter.' *Inter Ins. Exch. of Chi. Motor Club v. Wagstaff*, 144 Ohio St. 457, * * * (Ohio 1945) (citing 3 Ohio Jurisprudence, 275, § 32; 38 Ohio Jurisprudence, 300, § 51; 4 American Jurisprudence, 321, § 115; 50 American Jurisprudence, 752, § 110; 6 C.J.S., Assignments, § 85, p. 1142.). Thus, here, in assigning the * * * Leases, Mason Dixon has no remaining interests in the leaseholds that might be adjudicated in Plaintiffs' declaratory judgment action. *See Ford Motor*

*Credit Co. v. Ryan*, 189 Ohio App. 3d 560, 2010-Ohio-4601, * * * (Ohio Ct. App.) (affirming summary judgment for defendant on breach of contract claims because defendant had assigned its interest in the contract to another party)." (Parallel citations omitted.) *Cameron* at 1055-1056.

{¶14} The record shows that, prior to the filing by landowners of their declaratory actions, Anschutz had assigned all of its interests in the subject leases to lessees. Thus, it had no interest in this matter, and its motion for summary judgment should have been granted.

{¶15} Anschutz' first assignment of error has merit.

{¶16} For its second assignment of error, Anschutz states: "The trial court erred when it found the plaintiffs-appellees could invalidate their leases due solely to a defective signature acknowledgment." For their first assignment of error, lessees state: "The trial court erred in granting Plaintiff's Motion for Summary Judgment, and denying Counterclaimant-Defendants' Motion for Summary Judgment, on Plaintiffs' declaratory judgment claims." For their second assignment of error, lessees state: "The trial court erred in granting Plaintiffs' Motion for Summary Judgment, and denying Counterclaimant-Defendants' Motion for Summary Judgment, on Counterclaimant-Defendants' Counterclaims."

{¶17} We treat these assignments of error together.

{¶18} The principal contention of appellants under these three assignments of error is the trial court erred in declaring the subject leases void, as requested by landowners. Appellants all contend the leases are valid, and lessees further contend the trial court erred in not declaring so as requested in their counterclaim. Lessees also

contend they are entitled to findings that landowners breached the leases, and the implied covenant of quiet enjoyment, and to equitable tolling of the leases.

{¶19} In finding the leases void, the trial court relied on R.C. 5301.01, which provides, in pertinent part:

{¶20} "(A) A deed, mortgage, land contract as referred to in division (A)(21) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."

{¶21} Admittedly, none of these leases in question was properly acknowledged. However, appellants correctly cite to our recent opinion in *Dedor Revocable Declaration of Trust v. Reserve Energy Exploration Co.*, 11th Dist. Portage No. 2014-P-0001, 2014-Ohio-5383, for the proposition that this is not fatal to the validity of oil and gas leases between the original parties and their assigns. Citing to the decision of the court in *Cole v. EV Properties, L.P.*, 6th Cir. No. 13-3677, 563 Fed. Appx. 389, 2014 U.S. App. LEXIS 7464, we held:

{¶22} "*Cole* recently relied upon and quoted Ohio's long-standing rule that "'(a) defectively executed instrument, *either a lease* [***7] *or a deed*, when made by the

7

owner, may be enforced against him as a contract to make a lease or deed for the reason that it is his contract." *Lithograph Bldg. Co. v. Watt*, 96 Ohio St. 74, * * * (* * *) (1917).' (Emphasis sic.) (Parallel citation omitted.)

**{¶23}** "Regarding leases, the Sixth Circuit further stated the following:

**{¶24}** """There is no magic about the word 'lease'" that exempts leases from typical rules governing the enforcement of voluntary agreements between competent parties. *Pero v. Miller*, 32 Ohio App. 174, * * * (* * *) (Ohio Ct. App. 1928). If supported by consideration, a lease is "a valid and enforcible (sic) contract between the parties," even if "defectively executed and not recorded." *Id.*; *see also Seabrooke* (*v. Garcia*, 7 Ohio App.3d 167, * * * (9th Dist.1982)). (* * *) Defective acknowledgment, therefore, is not fatal to the enforceability of a lease as between parties who intended that it bind them (* * *). (* * *) The Ohio courts have (* * *) repeatedly held (* * *) that defectively acknowledged oil and gas leases remain enforceable between the parties, despite defective execution. *See, e.g., Logan Gas* (*Co. v. Keith*, 117 Ohio St. 206, * * * (1927)); *Langmede* (*v. Weaver*, 65 Ohio St. 17, * * * (1901)); *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, * * * ((7th Dist.2010)). (* * *) (Thus,) (w)here there is no dispute that the parties actually signed the defectively acknowledged instruments and intended that the transfer occur, the Ohio courts have insisted that the parties be bound "to that which they intended."' *Cole*, *supra*, 563 Fed. Appx. 389, 2014 U.S. App. LEXIS 7464 at *12-17." (Parallel citations omitted.) *Dedor* at ¶12-14.

**{¶25}** We went on to state in *Dedor* at ¶15-21:

**{¶26}** "Regarding deeds, this court stated the following:

8

{¶27} "''There is no question that (under) R.C. 5301.01(,) (* * *) the notary must properly acknowledge the grantor's signature. A failure to comply with the provisions of R.C. 5301.01 can result in an inability to pass 'legal title' as that term is defined in the context of affording notice of recordation of the conveyance of the property to creditors and subsequent purchasers. Nevertheless, as between the grantor and grantee, the deed is valid, despite a defective acknowledgment. (* * *)" (Citations omitted.)' *Estate of Niemi v. Niemi*, 11th Dist. Trumbull No. 2008-T-0082, 2009-Ohio-2090, ¶70, quoting *Basler v. Multicare Co., Inc.*, 11th Dist. Geauga No. 98-G-2201, 1999 Ohio App. LEXIS 5506, *9 (Nov. 19, 1999).

{¶28} "This court further stated:

{¶29} "'In *Citizens Nat'l Bank v. Denison* (1956), 165 Ohio St. 89, * * * (* * *), the Supreme Court held that where the acknowledgment or execution of the deed is defective, it is ineffective as against subsequent creditors. However, such a deed "is valid as between the parties thereto, in the absence of fraud." *Id.* at 95.' *Niemi*, *supra*, at ¶71. (Parallel citation omitted.)

{¶30} "In order to somehow escape the foregoing controlling law, appellants attempt to rely on cases dealing with traditional surface leases. *See, e.g., Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, * * * (a defective lease involving nonpayment of rent regarding a landlord who leased property to a tenant was found invalid); *Burger v. Buck*, 11th Dist. Portage No. 2008-P-0041, 2008-Ohio-6061 (a defective lease involving a barn to keep horses was found invalid). However, this case involves an oil and gas lease. Unlike a traditional surface lease, '(a)n oil and gas lease

9

differs from the ordinary lease of land for use by the lessee.' *Herman v. Grange Mut. Cas. Co.*, 11th Dist. Ashtabula No. 935, 1978 Ohio App. LEXIS 8995, *3 (July 31, 1978).

**{¶31}** "'"(A)n oil and gas lease is not a 'lease' in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject to the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is 'determinable' because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate."'" *Kramer v. PAC Drilling Oil & Gas, LLC*, 197 Ohio App.3d 554, 2011-Ohio-6750, ¶11, * * * (9th Dist.), quoting *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003).

**{¶32}** "Our review of the record and the foregoing case law reveals that the oil and gas lease at issue is valid, despite a defective acknowledgement, as there is no evidence of fraud. *Cole*, *supra*, 563 Fed. Appx. 389, 2014 U.S. App. LEXIS 7464 at *14; *Swallie*, *supra*, at ¶35. Contrary to appellants' assertions, there is no evidence that the contract is invalid. In fact, pursuant to *Cole*, both parties intended to be bound by the terms of the contract. They have acted under such terms with no allegations of any breach during the requisite time period. Appellants were given ample opportunity to read and review the document prior to signing. There is no dispute that appellants voluntarily signed the lease, thereby expressing their clear intent to be bound by the terms of that agreement. Appellants cannot now renege on their agreement by claiming

that the oil and gas lease contained a defective acknowledgement.  *Seabrooke, supra*, 169.""  (Parallel citations omitted.)

**{¶33}** As in *Dedor*, there is no evidence the subject leases were obtained by fraud.  Landowners admit they entered the leases freely.  The cases relied on by the trial court in rendering its decision were *Delfino*, *supra*, and *Burger*, *supra*, which we found inapplicable to oil and gas leases.

**{¶34}** Landowners invite us to revisit *Dedor*, based on the decisions in *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81 (1953); and *In re Gasoil, Inc.*, 59 B.R. 804 (Bankr.N.D.Ohio 1986).  We respectfully find the cases inapplicable.  *Back* dealt with the proper filing of oil and gas leases with the county recorder.  *Id.* at paragraph one of the syllabus.  *In re Gasoil* involved interpreting a section of the Bankruptcy Code, 11 U.S.C. 365(d)(4), and whether certain oil and gas leases constituted leases for purposes of that section.  *See, e.g., In re Gasoil* at 809.

**{¶35}** At oral argument, counsel for landowners appeared to concede that Ohio courts have long held that oil and gas leases need not meet the requirements of the Statute of Conveyances to be valid between the original parties and their assigns.  However, landowners contend this rule is limited to situations wherein actual development and production of oil or gas has commenced.  As support they cite to *Harris v. The Ohio Oil Co.*, 57 Ohio St. 118, 130 (1897), where the court held: "In this case, possession was delivered to the lessee and operations commenced, wells drilled, and oil produced in paying quantities, and in such cases it cannot be doubted that the lessee has a vested, though limited, estate in the lands for the purposes named in the lease. *Venture Oil Company v. Fritts*, 152 Pa. St., 451."  Landowners argue that where

11

no oil or gas production has commenced, the lessee has no vested estate, and the normal rule that attestation in the form required by R.C. 5303.01 is required to make the lease valid. *See, e.g., Delfino*, *supra*, at 284 ("Since early in Ohio legal history, it has been held that a defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby.")

**{¶36}** We respectfully disagree with landowners' contention. For instance, in *The Logan Gas Co. v. Keith*, 117 Ohio St. 206 (1927), wherein the subject oil and gas lease was improperly acknowledged, no oil or gas production had commenced, and the court nevertheless held the lease was valid between the assignees of the original parties.

**{¶37}** At oral argument, counsel for landowners also expressed concern that the leases in question impose an undue encumbrance on the land, limiting its transferability. The issue also concerns this court. The public policy of Ohio encourages the development of gas and oil production. *Newbury Twp. Bd. of Twp. Trustees v. Lomak Petroleum (Ohio), Inc.*, 62 Ohio St.3d 387, 389 (1992). Further, the Supreme Court of Ohio has held that leases for mineral production include an implied covenant to reasonably develop the land, and that leases which effectively allow a lessee simply to hold mineral rights based on annual payments to the lessor, without developing the land, breach the covenant. *Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 132-134.

**{¶38}** Perpetual leases, generally, are disfavored at Ohio law. *Hupp v. Beck Energy Corp.*, 7th Dist. Monroe Nos. 12 MO 6, 13 MO 2, 13 MO 3, 13 MO 11, 2014-Ohio-4255, ¶82 (collecting cases). *Hupp* presents the issue raised by landowners at oral argument: the degree to which oil and gas leases may constitute an undue

12

encumbrance on the land. In *Hupp*, the landowners signed oil and gas leases with a nominal term of ten years. *Id.* at ¶9. Landowners sought to have the leases declared void, which the trial granted. The trial court's conclusion was based principally on two paragraphs of the leases in question:

{¶39} "'2. This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a term of ten years and so much longer thereafter as oil and gas or their constituents are produced or are capable of being produced on the premises in paying quantities, *in the judgment of the Lessee*, or as the premises shall be operated by the Lessee in the search for oil or gas and as provided in Paragraph 7 (the dry hole clause).'

{¶40} "'3. This lease, however, shall become null and void and all rights of either party hereunder shall cease and terminate unless, within 12 months from the date hereof, a well shall be commenced on the premises, *or unless the Lessee shall thereafter pay a delay rental of each year, payments to be made quarterly until the commencement of a well*. A well shall be deemed commenced when preparations for drilling have commenced.' *Hupp* at ¶83. (Emphasis added.)

{¶41} As the Seventh District went on to observe:

{¶42} "The trial court concluded that these two provisions, when read together, allow Beck to extend the leases in perpetuity, in violation of Ohio public policy, 'either by making nominal delay rental payments pursuant to paragraph 3 or by determining in its own judgment that the premises are capable of producing oil or gas in paying quantities pursuant to paragraph 2.'" *Hupp* at ¶84.

**{¶43}** The Seventh District, largely relying on case law interpreting gas and oil leases, reversed the decision of the trial court, concluding the leases were for a term, not perpetual. *Hupp*, *supra*, at ¶85-104. The landowners appealed; and, January 28, 2015, in *Hupp v. Beck Energy Corp.*, 141 Ohio St.3d 1454, 2015-Ohio-239, the Supreme Court accepted the appeal on the following propositions of law:

**{¶44}** "An oil and gas lease which can be maintained indefinitely without development is a perpetual lease that is void as against public policy. That a lease purports to establish a fixed term is of no consequence if the duration of that term can be extended without development."

**{¶45}** "Where the express terms of an oil and gas lease effectively allow the lessee to postpone development indefinitely, and any stated time limits can be unilaterally extended by the lessee in perpetuity without any development, the lease is subject to the implied covenant of reasonable development notwithstanding a general disclaimer of all implied covenants." *Hupp v. Beck Energy Corp.*, S.Ct. Case No. 2014-1933, Memorandum in Support of Jurisdiction of Appellants Clyde A. Hupp, et al.

**{¶46}** Unfortunately for landowners in this case, none of the leases they signed contain provisions similar to those disapproved by the trial court in *Hupp*. Despite any other differences, each of the leases provides for a primary term of five years. Each provides that, if lessees do not develop oil or gas resources during the primary term, lessees may obtain an additional five year term to do so, by tendering payment. Each provides the leases expire, if, during the additional five year term, no development of oil or gas resources occurs. Nothing in the leases can be interpreted as rendering them perpetual leases, with no duty to reasonably develop.

**{¶47}** Anschutz' second assignment of error, and lessees' first assignment of error, have merit: the trial court should not have granted landowners summary judgment on their declaratory action. Lessees' second assignment of error also has merit, in that the trial court should have granted lessees summary judgment on their counterclaim, finding the leases valid.

**{¶48}** Lessees' second assignment of error also set forth claims for breach of contract. As we stated in *Marks v. Swartz*, 174 Ohio App.3d 450, 2007-Ohio-6009, ¶33 (11th Dist.): "A contract requires 'an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration.' *Lake Land Employment Grp of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 246, 2004 Ohio 786, * * *." (Parallel citation omitted.) Oil and gas leases are contracts. *Dedor*, *supra*, at ¶14. All of the elements of an action for breach of contract are met in these cases. Anschutz offered the landowners the leases. The landowners all accepted the leases: none claim they did not understand them, or acted under duress. Nothing indicates any of the parties lacked contractual capacity. The landowners received payment for the initial lease terms. Oil and gas leases are legal in Ohio. At the end of the initial lease terms, landowners refused tender of payment for additional five year terms, as required under the leases. Lessees were entitled to summary judgment on their breach of contract claims.

**{¶49}** Lessees further asserted claims for breach of the implied covenant of quiet enjoyment.

15

**{¶50}** "In Ohio, a covenant of quiet enjoyment is implied into every lease contract for realty and protects the tenant's right to a peaceful and undisturbed enjoyment of his leasehold. *Glyco v. Schultz* (1972), 35 Ohio Misc. 25, 33, * * *. In discussing the covenant of quiet enjoyment, this court has stated: 'The covenant is breached when the landlord "'* * * obstruct(s), interfere(s) with, or take(s) away from the (* * * ) (tenant) in a substantial degree the beneficial use (* * *);" of the leasehold.' *Howard v. Simon* (1984), 18 Ohio App.3d 14, 16, * * *, citing *Frankel v. Steman* (1915), 92 Ohio St. 197, 200, * * *. The degree of the impairment required is a question for the finder of fact. *Id.*" (Parallel citations omitted.) *Dworkin v. Paley*, 93 Ohio App.3d 383, 386 (8th Dist. 1994).

**{¶51}** In this case, we have determined that valid leases existed between landowners and lessees. By filing the actions to declare these leases invalid, landowners have effectively taken from lessees any beneficial use of their leaseholds. Consequently, lessees were entitled to summary judgment regarding the issue of liability on their claims for breach of the implied covenant of quiet enjoyment.

**{¶52}** Under their second assignment of error, lessees also argue they are entitled to the benefit of the doctrine of equitable tolling: i.e., that the lease terms be extended for the period that landowners' actions have interfered with the leases. *See, e.g.*, *Cameron v. Hess Corp.*, S.D.Ohio No. 2:12-CV-00168, 2014 U.S. Dist. LEXIS 56510, *9 (April 23, 2014). In *Cameron*, the court determined that, since it had found the subject leases valid, lessee oil and gas company was entitled to tolling from the time service of the papers commencing the action to invalidate the leases was made upon the company, until final disposition of the case, including appeal. *Id.* at *17. As the

16

subject leases in this case are valid, lessees herein are entitled to equitable tolling from the time the service of process of landowners' actions was made upon lessees, until this matter is finally disposed.

{¶53} The assignments of error having merit, the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.


DIANE V. GRENDELL, J., concurs.

THOMAS R. WRIGHT, J. concurs in judgment only.